878 So.2d 1013 (2004)
PEARL RIVER VALLEY WATER SUPPLY DISTRICT and Harold Gray, Appellants,
v.
Bobby BRIDGES, Appellee.
No. 2002-CA-01425-COA.
Court of Appeals of Mississippi.
March 23, 2004.
Rehearing Denied June 8, 2004.
Certiorari Denied July 29, 2004.
*1014 Susan Lum Runnels, Jackson, attorney for appellants.
John Hinton Downey, Jackson, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and GRIFFIS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Harold Gray and the Pearl River Valley Water Supply District were found jointly and severally liable for injuries sustained by Bobby Bridges during an arrest. Gray and the District appeal arguing they are immune from liability. We agree. Consequently, we reverse and render.
¶ 2. Officer Harold Gray was employed by the Pearl River Valley Water Supply District where he was a manager of the Leake County Water Park. He resided at the park and supervised its day-to-day operations and its employees and facilities. Gray patrolled the park and performed all law enforcement duties. Of importance, it is illegal to possess alcohol in Leake County.
¶ 3. This case arises from an arrest that took place on August 30, 1997, at the park's boat ramp. Officer Gray was riding through the park when he noticed Bobby Bridges's truck driving down the hill into the park pulling a boat. Two people were in the truck while Bridges and another man were riding in the boat as it was being towed. The officer did not approach the group at that time.
¶ 4. Later, Officer Gray again drove by the ramp and saw that Bridges's boat was off its trailer, full of water and resting on the concrete boat ramp. The trailer was still attached to the truck. Not wishing to approach the group alone, Officer Gray made an unsuccessful effort to locate another of the District's managers. He then asked another man to join him, but he refused. Chris Howard, a former Carthage police officer who was camping in the park, agreed to accompany Gray to the boat ramp. They went to the launch and approached the truck and boat. Officer Gray asked if the men had consumed any alcohol. One of the men told him that all of them had two or three drinks early in the day. He stated no one had any alcohol that night. Bridges told Officer Gray that he had not consumed any alcohol. Officer Gray noticed a cooler and beer cans in the bed of the truck. The cooler contained nine beers. Bridges stated that the beer, the cooler and the truck were his.
¶ 5. Officer Gray informed Bridges that he was under arrest. He smelled alcohol on Bridges's breath. By this time, another officer had arrived at the ramp. Officer Gray took the cooler from Bridges's truck and brought it to his vehicle. Officer Gray then instructed Bridges to place his hands *1015 on the truck, but he refused. Gray informed Bridges that he needed to handcuff him. Bridges had his left hand in his pocket. As Officer Gray reached for his hand, Bridges took his hand out of his pocket and stepped back. Officer Gray grabbed Bridges's arm and locked it behind Bridges. Bridges resisted, but Officer Gray was able to pin Bridges against the truck. However, the two continued to struggle. Bridges pushed away from the truck with his right hand. Officer Gray again pinned him against the truck. Bridges continued to struggle and Officer Gray applied a wrist lock. Bridges complained that this additional pressure on his wrist hurt him. Officer Gray told Bridges that if he stopped resisting, he would not have to apply the wrist lock.
¶ 6. Officer Gray was able to place Bridges in handcuffs. He took Bridges to the other officer's truck. At the request of one of Bridges's relatives, Gray then replaced the handcuffs on Bridges such that his hands were in front rather than behind his back. Bridges would receive a misdemeanor conviction for public drunkenness and resisting arrest. His conviction was not appealed.
¶ 7. On the night of his arrest, Bridges went to the emergency room of the Leake County Hospital after he left the jail. He was diagnosed with a sprained left wrist. Then, on September 2, 1997, he went to Mississippi Baptist Medical Center emergency room where he was again diagnosed with a sprained left arm. A week later Bridges was diagnosed as having an avulsion fracture on the left ulna. On October 10, 1997, Bridges was diagnosed with a torn rotator cuff.
¶ 8. Bridges contended that this arrest and the force used during it was a result of animosity that Officer Gray held towards him. The two had encountered each other on prior occasions. On June 20, 1997, Officer Gray noticed an unregistered person utilizing the park's shower. The person was Bridges's teenage grandson. Officer Gray allowed the boy to finish his shower but told him that the facilities were to be used only by those registered in the park. Later that night, Bridges went to Officer Gray's residence to confront him about the incident with his grandson. After some words between the two, Officer Gray instructed Bridges to leave. Bridges did. The next day, Officer Gray filed a police report and spoke with Reservoir Patrol Chief James Stepp. Officer Gray later filed criminal affidavits against Bridges alleging that Bridges had pulled back his fist as if to strike the officer, and that he had been intoxicated. Bridges was convicted of simple assault. He did not appeal this conviction. A few days after this incident, Kenneth Griffin, the District's general manager, received an anonymous letter indicating concern about these events.
¶ 9. Bridges sued the District and Officer Gray for injuries that allegedly resulted from excessive force used in his arrest during the boating event. Bridges claimed that the District knew or should have known of Officer Gray's malicious attitude toward Bridges and failed to take corrective action. The trial court granted judgment for Officer Gray and the District in 1999. The Supreme Court reversed and remanded for reasons that we will explain. Bridges v. Pearl River Valley Water Supply Dist., 793 So.2d 584 (Miss.2001).
¶ 10. On remand, the trial court found the District and Officer Gray jointly and severally liable for an award to Bridges of $64,309.92. From this, the District and Officer Gray appeal.

DISCUSSION

1. Mississippi Tort Claims Act
¶ 11. Bridges claim against Gray and the District was necessarily analyzed under *1016 the requirements of the Mississippi Tort Claims Act. The statute acknowledges liability for torts committed by governmental actors, but also provides for immunity in certain situations. Relevant to the present case are separate immunities for law enforcement activities and for discretionary functions:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
...
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused....
Miss.Code Ann. § 11-46-9(1)(c) & (d) (Rev.2002).
¶ 12. Section 11-46-9(1) contains exemptions lettered from (a) through (x). They are written in the disjunctive, as the next to last section (w) concludes with an "or," which is then followed by the last immunity provision (x). The immunities vary widely and it would be impossible for all to fit. Applicability of any one of these sections creates immunity. State v. Hinds County Bd. of Supervisors, 635 So.2d 839, 842 (Miss.1994) ("the State cannot be held liable for damages if the conduct falls within one of the exceptions found in Miss.Code Section 11-46-9") (emphasis added); see generally, Jim Fraiser, "A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act: Employees' Individual Liability, Exemptions to Waiver of Immunity, Non-Jury Trial, and Limitation of Liability," 68 MISS. L.J. 703, 743-44 (1999), evaluating the unpublished opinion of Hall v. Miss. Dep't of Pub. Safety, 708 So.2d 564 (Miss.1998) (table). Hall reached the self-evident conclusion that no defendant needs to satisfy all the exemptions: "the statute is written in the disjunctive which indicates that subsections (1)(c) and (1)(d) should not be read together but should be read as alternatives separate and apart from one another." Id., 68 MISS. L.J. at 743, quoting Hall, slip op. at 8. Hall is not precedent, but the statutory structure is clear. If either the law enforcement exception or the discretionary function exemption applies, there is immunity.

2. First Bridges Appeal
¶ 13. The Supreme Court in its opinion on the initial appeal in this suit reviewed a grant of summary judgment in favor of the District and a dismissal of Officer Gray on the pleadings. The District had argued in its motion that it was entitled to the law enforcement immunity since at all times Bridges was engaged in criminal conduct. It further argued that the quality of its supervision of Bridges was a matter that fell within its discretion. The trial court agreed with both arguments when it granted summary judgment. As to Officer Gray, the trial court dismissed because it found no dispute that the officer was acting within the course and scope of his employment at all times. Under one section of the Act, no employee so acting "shall be held personally liable for acts or omissions" that allegedly cause harm. Miss.Code Ann. § 11-46-7 (Rev.2002).
¶ 14. The Supreme Court found that since Bridges was involved in criminal conduct at the time of injury as shown by his *1017 conviction of a misdemeanor growing out of the incident, the immunity under section 11-46-9(1)(c) applied to the District. Bridges, 793 So.2d at 588. Then the Court found that absent malice, Officer Gray also was immune. Id.
¶ 15. However, after reaching this conclusion, the court in an entirely separate section of its opinion discussed the independent immunity provision for discretionary function. Id. at 588-90. To be immune, the court found that the discretionary act must have involved a planning or policy making decision. Id. at 589. The court stated that "the grant of summary judgment to the District on this issue was premature" and remanded to resolve whether the District was engaged in a policy-oriented decision-making process when supervising employees. Id. at 589-90.
¶ 16. Finally, as to Officer Gray, the court interpreted three separate sections of the Tort Claims Act. The trial court had relied on a provision that there was immunity for a governmental employee acting within the scope of his employment. Miss.Code. Ann. § 11-46-7(1) (Rev.2002). However, that same section then states that an employee is outside of his employment when he acts with malice. Miss.Code Ann. § 11-46-7(2) (Rev.2002). A governmental entity is immune when its employee acts with malice. Miss.Code Ann. § 11-46-5(2) (Rev.2002). The issue of Gray's liability was therefore remanded to the trial court. Bridges, 793 So.2d at 590.

3. Remand Proceedings
¶ 17. As a result of the remand, the circuit court conducted an evidentiary hearing. The court found that both the District and Officer Gray were liable. The court noted the evidence that Bridges had at different times caused trouble for other campers that was "sufficient grounds for his removal from the campground and sufficient ground to bar him from further going on the premises of the park, but, that was not done." The court found that Bridges's arrest was unnecessary:
Then the activity was the arrest of a person who apparently was drinking, but was not involved in any accidental incident at that time, and, the question then is was it necessary to take that person into custody[?]
The trial court's later analysis stated on the record after the hearing makes it evident that his answer was that the arrest was not needed since Bridges was not the driver of the vehicle or the boat. Since the driver of the truck was not intoxicated, there was no need to arrest anyone.
¶ 18. The trial court also found that even if the arrest was reasonable, Officer Gray had used excessive force. The District was found to have failed in its duty to supervise the officer since earlier evidence of problems between Bridges and Gray had come to the District's attention. The trial court found against the District "for negligent supervision and against Officer Gray for malicious activity in the amount of $64,309.92, plus all costs of Court." Since there is no earlier reference by the trial judge to "malice," we infer that he is basing that conclusion on Gray's making an arrest that was "unnecessary" as opposed to using other measures, and that malice also could be inferred due to earlier incidents between Gray and Bridges.

4. Law Enforcement Immunity
¶ 19. We now review the application of the law to the facts presented in this record. Without question, the arrest that was made was lawful. Leake County is a dry county. Bridges without question committed alcohol-related offenses, as he admitted that he had been drinking the day he *1018 was arrested and to owning the beer in this truck. Since there was no question that a crime had been committed and Officer Gray had probable cause to believe that to be so, the arrest was completely lawful. Indeed, Bridges was later convicted of crimes that arose from this incident.
¶ 20. The Supreme Court on the initial appeal found that the District was entitled to immunity since Gray had probable cause to arrest and the alleged injuries had a sufficient nexus to that crime. Bridges, 793 So.2d at 588. Depending on what is then made of the Supreme Court's analysis of the discretionary function issue in its 2001 opinion, the District was immune from liability for injuries that arose as a result of this arrest.
¶ 21. Officer Gray would be liable if his actions were malicious. That is because the employee's immunity arises from acting on behalf of the governmental entity. Unless the employee is acting within the course and scope of employment, he is not entitled to the limited immunity that falls on the sovereign. Miss.Code. Ann. § 11-46-5(2) (Rev.2002). We now address that issue.

5. Malice
¶ 22. The trial court found that Officer Gray acted with malice when he arrested Bridges. If Officer Gray was malicious when he made the arrest, the District still remains immune:
For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.
Miss.Code Ann. § 11-46-5(2) (Rev.2002). The issue of malice solely relates to Gray's liability.
¶ 23. We look now to any evidence of malice on the part of Officer Gray. The trial judge made no fact-finding in his opinion as to what constituted the possible malice. His discussion of a prior incident between Gray and Bridges may imply a basis for malice when Gray made the arrest, but the trial court does not clearly so find. During Bridges's testimony, the only basis for inferring malice that he states was that he was the only person that Officer Gray questioned about drinking.
¶ 24. Law enforcement officers may have frequent encounters with individuals who are prone to break certain laws. In this case, the trial judge believed that Bridges had a history of actions that could have led to his being barred from using this park. We need not examine for whether such authority exists, but we note that this is the factual context. Such encounters may create ill will between the law enforcement officer and the private citizen. We reject that if a law enforcement officer has had previous altercations within the scope of his duties with a citizen, and without any further evidence that the officer in a later lawful encounter was acting with unusual force or conduct of some other extreme nature, that a finding of malice is justified. Even if we conclude that Officer Gray might not have arrested Bridges if he had been feeling friendlier towards him, the decision on how to exercise proper law enforcement discretion can not become Tort Claims Act "malice" on facts such as these.
¶ 25. In the present case, the undisputed evidence is that Bridges was committing a crime in Gray's presence, that the officer sought the assistance of others so that the encounter with Bridges would not be solely by Gray, and that injuries arose *1019 in the process of Bridges's resisting the lawful arrest. Bridges was later convicted for resisting the arrest, and that became final when it was not appealed. There is no allegation of a beating or other brutality, no extreme measures of any sort except for the possibility that Gray used more force than needed in handcuffing Bridges. It is undisputed, though, that Bridges was resisting Gray's efforts to place the cuffs on his hands.
¶ 26. Whatever might have been Gray's thoughts, there is nothing in his actions to create liability. In essence, the claim for liability here is that the officer did not prove that he had banished all possible ill feelings towards the person being arrested that may have arisen from earlier incidents. Indeed, the same potential for liability for an officer's malice would arise simply from actions by an accused contemporaneous with the arrest  after an encounter by an officer for lawful reasons, the suspect may assault the officer or use abusive language. That conduct may then be followed by an arrest for the crime that caused the officer to confront the lawbreaker in the first place. We are not saying that malice can never be shown in such circumstances. We are saying that it is not shown when the only evidence is the fact of the prior encounters between the officer and the law-breaker and that they may have created bad relations between officer and citizen.
¶ 27. True, we must look at the facts of the arrest in light of the background between the participants, but we should not look in such a way as to be blinded by that history. Absent the prior encounters, nothing in the facts in the record about this arrest would have caused Gray to be found to have acted outside the scope of his employment in the basis of malice. We do not find the background to change that conclusion.
¶ 28. We reverse the finding that Gray acted with malice and find that he was immune.

6. Discretionary Function Immunity
¶ 29. We previously noted that the Supreme Court in the initial appeal in this case analyzed the discretionary function immunity even after finding that the district was entitled to immunity under the law enforcement exception. It found that granting of summary judgment "premature" on discretionary function. Bridges, 793 So.2d at 589-90. The court explained why this was still an open issue factually and remanded. Id.
¶ 30. We cannot interpret the Supreme Court's opinion as having turned the possible inapplicability of the immunity provision on discretionary function into an affirmative source for liability. We have explained that each immunity provision is independent of the others. If the claim arose "out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection," and the claimant was engaged in criminal activity at the time of injury, then there is immunity even if the act causing the injury does not qualify as discretionary. Miss.Code Ann. § 11-46-9(1)(c) & (d) (Rev.2002).
¶ 31. Though the ruling on discretionary function was "premature," the Court did not attempt to correlate the effect of that conclusion with its earlier decision that law enforcement immunity definitely applied. There was uncertainty about discretionary function immunity and certainty about the law enforcement immunity. We find no holding in the 2001 opinion that if the discretionary function immunity did not apply, that this canceled the application of the law enforcement immunity. *1020 The case needed to be remanded for consideration of Officer Gray's possible malice, since the trial judge had improperly analyzed the law as to the malice issue. Perhaps it would have been better just to dismiss the District; perhaps that possibility was not mentioned on the initial appeal.
¶ 32. In the absence of a holding in Bridges that both immunities must apply before either does, in light of the clear independence of these separate immunity provisions, and in recognition of our obligation to apply the law as reasonably interpreted in light of statutory language and precedent to the admitted facts in the case, we hold that the District is completely immune from liability because of the applicability of Section 11-46-9(1)(c). Gray is immune because no evidence of malice exists and he was at all times relevant to the claim acting within the course and scope of his employment.
¶ 33. Because of these conclusions, we need not review the discretionary function issue.
¶ 34. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. BRIDGES AND LEE, JJ., NOT PARTICIPATING.