954 So.2d 468 (2007)
Jeffery CHAPMAN, Appellant
v.
CITY OF QUITMAN, Mississippi, Appellee.
No. 2005-CA-02042-COA.
Court of Appeals of Mississippi.
March 20, 2007.
*471 John Hubert Anderson, Hattiesburg, attorney for appellant.
Michael Jeffrey Wolf, Jackson, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. This suit brought under the Mississippi Tort Claims Act ("MTCA") arose from injuries that Jeffery Chapman sustained when a fifteen year old juvenile assaulted Chapman in a City of Quitman patrol car that was left unlocked with the engine running. Chapman appeals to this Court from the Clarke County Circuit Court's grant of summary judgment in favor of the City of Quitman. Finding no reversible error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On or about June 7, 2003, Jeffery Chapman attended a party at the home of one of Chapman's neighborhood friends, James Vale. At some point that night, Vale called the police to his residence. The reason that Vale summoned the police is not clear.[1] Chapman speculated *472 during his deposition that Vale may have misinterpreted a conversation that Chapman and his girlfriend, Samantha, were having in Vale's yard as being some type of domestic dispute. In any event, City of Quitman Officer Eric O'Neil responded to the call. A large crowd of teenagers, described by Chapman as an "angry mob," had gathered by the time O'Neil arrived at the scene.
¶ 3. According to Chapman, R.W. and C.W., teenage children of Chapman's girlfriend, Samantha, were part of this "mob" of approximately fifteen teenagers. When asked during his deposition what he thought had incited the crowd, Chapman speculated that "[t]hey were doing it because they thought I had jumped on Samantha."[2] Regardless of their motive, Chapman testified that the children were chasing him down the street throwing bricks, sticks, "and stuff" at him and that some members of the crowd were wielding knives. To keep members of the angry crowd at bay, Chapman stated that he was swinging a wooden stick that he had retrieved from his vehicle. All of this action took place as Chapman was fleeing the crowd on the street between his and Vale's residences, which were approximately four blocks apart.
¶ 4. The nature and extent of Officer O'Neil's efforts to control the mob and protect Chapman after O'Neil's arrival is unclear. However, Chapman did admit that he saw Officer O'Neil talking to the crowd. Furthermore, Chapman stated in his response to the city's motion for summary judgment that Officer O'Neil was "attempting to deal with a crowd without calling for backup." Apparently, while he attempted to deal with the crowd, Officer O'Neil left the door to his police car unlocked and the engine running. It was during this sequence of eventswhile Officer O'Neil was talking to the crowdthat C.W. sneaked past O'Neil, jumped into the officer's patrol car, and drove down the street toward Chapman, ultimately striking Chapman with the police cruiser. Chapman stated that he saw the police car approaching, but thought that "it was one of the police coming to my aid, and it wasn't. That's how he got up on me so easy." As a result of the impact, Chapman testified that he suffered serious injuries to his legs, injuries which have prevented Chapman from working since the incident.
¶ 5. Chapman filed a complaint on August 31, 2004 and amended his complaint on December 29, 2004, naming the City of Quitman as a defendant to the action.[3] In the allegation relevant to this appeal, Chapman alleged that the "City of Quitman and/or Sheriff of Clarke County, Mississippi, acting individually or by and through deputy(ies) negligently allowed one of the vehicles to be confiscated by a bystander." The city filed its motion for summary judgment on March 24, 2005, asserting that the city was immune from liability pursuant to section 11-46-9(1)(c), *473 (d), and (u) of the Mississippi Code. The trial court rendered a memorandum opinion finding the city immune from liability for Chapman's injuries based on all three immunity provisions. Accordingly, the trial court granted summary judgment in favor of the defendant city. Chapman timely perfected this appeal, arguing that the immunity provisions cited by the trial court are not applicable to the actions of Officer O'Neil on the night in question. Thus, Chapman asserts that the trial court erred by granting summary judgment to the city. We disagree.
¶ 6. While we cannot affirm the trial court's determination that the city is immune pursuant to section 11-46-9(1)(d), as the trial court failed to utilize both prongs of the appropriate two-prong test adopted in Jones v. Mississippi Department of Transportation, 744 So.2d 256 (Miss.1999), we find that the immunities found at section 11-46-9(1)(c) and (u) are applicable. Therefore summary judgment was appropriate, and we affirm based on these two immunities.

STANDARD OF REVIEW
¶ 7. This appeal involves the construction and application of exemptions from liability that the Legislature has afforded governmental entities and their employees in certain situations. Codified at Mississippi Code Annotated section 11-46-9 (Rev.2002), these exemptions, when applicable, constitute "an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation." Mitchell v. City of Greenville, 846 So.2d 1028, 1029(¶ 8) (Miss.2003) (citation omitted). Accordingly, immunity afforded by the Mississippi Tort Claims Act is a question of law properly addressed by summary judgment under Mississippi Rules of Civil Procedure 56. Id.
¶ 8. We review the grant or denial of summary judgment and other questions of law de novo. Busby v. Mazzeo, 929 So.2d 369, 372(¶ 8) (Miss.Ct.App.2006). All evidence is viewed in a light most favorable to the non-moving party. Id. Viewed in this light, summary judgment is proper if the moving party has demonstrated that there are no material issues of genuine fact and that he is entitled to judgment as a matter of law. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990).

DISCUSSION
¶ 9. The sole issue presented on appeal is whether the trial court erred by granting summary judgment in favor of the City of Quitman. The trial court held that the city was immune from liability based on the following exemptions found in the Mississippi Tort Claims Act:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
. . . .
(u) Arising out of or resulting from riots, unlawful assemblies, unlawful public *474 demonstrations, mob violence or civil disturbances. . . .
Miss.Code Ann. § 11-46-9(1)(c), (d), and (u).
1. Whether the police protection exemption applies
¶ 10. Section 11-46-9(1)(c), in pertinent part, affords immunity for acts or omissions of employees while performing duties relating to police protection "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury. . . ." Chapman cites Mississippi Department of Public Safety v. Durn, 861 So.2d 990 (Miss.2003) to support his contention that the police protection immunity does not apply.
¶ 11. One of the issues considered by the court in Durn was whether the plaintiff/victim was engaged in criminal activity that contributed to the accident at issue. Although the supreme court ultimately found that the plaintiff in that case was not engaged in criminal activity, it nevertheless acknowledged that "[i]f the victim is engaged in an illegal activity that is a cause of the harm, the government is immune from liability." Id. at 997(¶ 20) (citing Williams v. City of Jackson, 844 So.2d 1161, 1164 (Miss.2003)). Based on this language from Durn, Chapman argues that since he was not engaged in criminal activity on the night in question, the police protection exemption does not apply. While a victim's criminal contribution to his own injury certainly qualifies a governmental entity for immunity under this provision, Chapman apparently overlooks the fact that, in the absence of criminal activity on the part of the victim, the police protection exemption still applies unless the act or omission complained of evinces a "reckless disregard of the safety and well-being" of others. See id. at 994 (¶ 10). In this regard, a showing that Chapman was not engaged in criminal activity does not, by itself, thwart the city's immunity under this MTCA provision; rather, Chapman must also demonstrate that Officer O'Neil's failure to remove the keys from and/or lock the doors of his police cruiser evinced a reckless disregard for the safety of others.
¶ 12. The City of Quitman argues that Officer O'Neil's actions on the night in question did not amount to negligence, much less to reckless disregard for the safety of others. According to our supreme court, reckless disregard is a higher standard than gross negligence. Id. This standard "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." City of Jackson v. Lipsey, 834 So.2d 687, 691-92(¶ 16) (Miss.2003). Reckless disregard "usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." Maye v. Pearl River County, 758 So.2d 391, 394 (¶ 16) (Miss.1999). Reckless disregard has consistently been found where the conduct at issue demonstrated that the actor appreciated the unreasonable risk at stake and deliberately disregarded "that risk and the high probability of harm involved." See Maldonado v. Kelly, 768 So.2d 906, 910-11 (¶ 11) (Miss.2000). "The plaintiff has the burden of proving `reckless disregard' by a preponderance of the evidence." Titus v. Williams, 844 So.2d 459, 468 (¶ 37) (Miss.2003) (citing Simpson v. City of Pickens, 761 So.2d 855, 859 (Miss.2000)).
¶ 13. We find no evidence in the record to support Chapman's assertion that the police protection exemption is inapplicable in the instant case. The only account contained in the record of what happened on the night in question is found in the deposition testimony of Chapman, which was *475 attached as an exhibit to the city's motion for summary judgment. Chapman's testimony paints a truly frightening picture of the events leading up to his injuries. Chapman testified that there was a crowd of angry teenagers who, by their actions, Chapman was convinced were intent on killing or seriously injuring him. Faced with the imminent danger posed by fifteen or more angry individuals wielding knives and throwing sticks, bricks, and other objects, we cannot say that O'Neil's decision to leave his keys inside his patrol car with the engine running and doors unlocked evinced a conscious indifference to the possibility, or "almost a willingness," that someone would steal O'Neil's patrol car and injure Chapman. As the supreme court held in Titus, the plaintiff has the burden of proving "reckless disregard by a preponderance of the evidence." Titus, 844 So.2d at 468 (¶ 37). Chapman does not point out, and our review of the record does not reveal, evidence which creates a genuine issue as to whether Officer O'Neil acted with reckless disregard.[4] Accordingly, the police protection exemption is applicable in this case, and summary judgment, therefore, was appropriately granted to the City of Quitman.
2. Whether the discretionary function or duty immunity applies
¶ 14. In determining whether governmental conduct is a "discretionary function or duty" within the meaning of section 11-46-9(1)(d) of the MTCA, this Court must utilize the public policy function ("PPF") test as adopted by the Mississippi Supreme Court in Jones v. Mississippi Department of Transportation, 744 So.2d 256, 260(¶ 11) (Miss.1999) (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). The two prongs of the PPF test properly acknowledge the purpose of the discretionary function immunity, which is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at (¶ 10) (citing Gaubert, 499 U.S. at 323, 111 S.Ct. 1267). The first prong requires a determination of "whether the activity involved `an element of choice or judgment.'" Id. (quoting Gollehon Farming v. United States, 17 F.Supp.2d 1145, 1154 (D.Mont.1998)). If answered in the affirmative, the second prong involves a determination of "whether the choice involved social, economic or political policy." Id.; see also Stewart v. City of Jackson, 804 So.2d 1041, 1047(¶ 11) (Miss.2002) (holding that decisions regarding transporting elderly patient did not involve social, economic, or political policy); Dotts v. Pat Harrison Waterway Dist., 933 So.2d 322, 326(¶ 9) (Miss.Ct.App.2006) (finding that waterway district's decisions regarding the operation of swimming facilities were grounded in public policy).
¶ 15. The city argues that since section 11-46-9(1)(d) "is silent on any requirement that a social, economic or political policy be implicated," courts are not required to apply both prongs of the PPF test. The city cites seemingly inconsistent opinions rendered by both this Court and by the Mississippi *476 Supreme Court to support this contention. In some of these cases, the second prong of the PPF test was utilized, while only the first prong was considered in others. We find the city's argument unpersuasive for three reasons.
¶ 16. First, we note that some of the cases cited by the city involved acts or omissions that have been so consistently held to be a discretionary function or duty that a thorough analysis utilizing both prongs of the PPF test was not warranted. See, e.g., Barrentine v. Dep't of Transp., 913 So.2d 391, 393 (¶ 8) (Miss.Ct.App.2005) (citing Webb v. County of Lincoln, 536 So.2d 1356, 1359 (Miss.1988); Nathaniel v. City of Moss Point, 385 So.2d 599, 601 (Miss.1980); Wall v. City of Gulfport, 252 So.2d 891, 893 (Miss.1971)) (stating that "the placement or non-placement of traffic control devices or signs is a discretionary governmental function"). Second, in other cases cited by the city, the dispositive issue was not whether the act or omission complained of was discretionary within the meaning of section 11-46-9(1)(d), but rather whether the ordinary care standard applied even if the act or omission at issue was discretionary. See, e.g., Collins v. Tallahatchie County, 876 So.2d 284, 289(¶ 16) (Miss.2004) (holding as erroneous the principle that one must use ordinary care in performing a discretionary function to retain immunity); accord Barrentine, 913 So.2d. at 394(¶ 10). Third, our supreme court explicitly stated in Jones that it was adopting the PPF test. Until the Mississippi Supreme Court expressly abandons the PPF test, we are not, nor are the trial courts of this State, at liberty to discard either prong of that test. With the foregoing admonition in mind, we will now address the judgment of the trial court with respect to this exemption.
¶ 17. In rendering summary judgment for the city based on section 11-46-9(1)(d), the trial court correctly recited the public policy function test and supporting case law. The court, however, applied only the first prong in concluding that the city was entitled to immunity under this MTCA provision. Consequently, because the trial judge did not apply both prongs of the public policy function test to the facts of this case, we cannot affirm summary judgment on this ground. Were we not affirming summary judgment pursuant to sections 11-46-9(1)(c) and (u), we would be obligated to remand this case for a determination of the city's immunity based on both prongs of the public policy function test.[5]
3. Whether the mob violence exemption applies
¶ 18. The final provision upon which the city urged and was granted immunity by the trial court is found at section 11-46-9(1)(u), which provides immunity for claims "[a]rising out of or resulting from riots, unlawful assemblies, unlawful public demonstrations, mob violence or civil disturbances. . . ." The trial court found that Officer O'Neil's acts or omissions *477 which allowed C.W. to sneak past the officer, steal his police cruiser, and run over Chapman with the patrol car were influenced by "[t]he violent actions of the angry crowd which faced Officer O'Neil. . . ." As such, the trial court held that Chapman's injuries arose out of mob violence and, therefore, the city was immune from Chapman's claim. Although we could not find in the record evidence which establishes the basis for Officer O'Neil's decision to leave his engine running, we nevertheless agree that this exemption applies.
¶ 19. Application of the mob violence exemption found in the MTCA appears to be an issue of first impression in the appellate courts of this State, as neither party has provided any Mississippi case law to support their positions nor has our own independent research revealed any such authority. Other jurisdictions have, however, construed and applied similar immunity provisions. In addition, at least one legal scholar has analyzed the applicability of Mississippi Code Annotated section 11-46-9(1)(u) based on jurisprudence from other jurisdictions. In his law review article entitled A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act: Employees' Individual Liability, Exemptions to Waiver of Immunity, Non-jury Trial and Limitation of Liability, 68 Miss. L.J. 703 (1999), Jim Frasier states that "[t]he key to determining the application of this exemption is the definition given to such terms as `mob violence,' `riots,' and `civil disturbances.'" Id. at 827. Also important to application of this provision is the determination of whether a particular claim arose out of or resulted from any of the enumerated conditions. We will address both of these issues in turn.
¶ 20. In Blackledge v. Omega Insurance Co., 740 So.2d 295, 297(¶ 4) (Miss.1999), the Mississippi Supreme Court was faced with interpreting an insurance contract which provided coverage for damage caused by riot or civil commotion. In explaining its formulated definition for the term "riot," the supreme court held that the term encompassed at least the following four elements:
1) unlawful assembly of three or more people (or lawful assembly that due to its violence and tumult becomes unlawful), 2) acts of violence, and 3) intent to mutually assist against lawful authority. The common law clearly indicates that lawful authority is not limited to official law enforcement, but extends to those whose rights are or may be injured and who seek to protect those rights. In addition, there must be some degree of 4) public terror. We include this element to prevent incorrect prosecution under riot, when a more fitting charge is available, and the crime or violence is of a more limited, private nature. Without the element of public terror, any minor public disturbance could legally be a riot.
Id. at 298-99(¶ 9). "Mob" has been defined by courts in other jurisdictions by reference to "riots." See A. & B. Auto Stores of Jones Street, Inc. v. Newark, 59 N.J. 5, 279 A.2d 693, 699-700 (N.J.1971) (stating that the term "mob" includes, but is not limited to, situations where a "political, social, racial, ethnic, or economic issue which affects the rioters in a common way"). In this regard, where the elements necessary to constitute a riot are met, the collective group of rioters may properly be referred to as a "mob."
¶ 21. Applying these definitions to the circumstances that Chapman and Officer O'Neil faced in the instant case, we find that the actions of the angry crowd of teenagers constituted a riot. Chapman testified numerous times during his deposition that there were at least fifteen people *478 assembled on the night in question, all angry with Chapman and attempting to seriously injure or kill him. Chapman testified that several members of the crowd were chasing him down the street, throwing "sticks and bricks and stuff" at him. Chapman also stated that some members of the crowd were wielding knives in an attempt to injure him. Additionally, when asked whether he considered the events of that night to constitute a riot, Chapman testified, "Yes." Chapman further testified that the crowd was disturbing the peace, and that he thought "they were trying to kill me, really."
¶ 22. From Chapman's description of the nature and acts of the angry crowd on the night in question, we find all of the necessary elements of a riot outlined in Blackledge to be present in the instant case:(1) there was a lawful assembly of three or more people which became unlawful due to the "violence and tumult" of those involved; (2) the crowd committed "acts of violence" as evidenced by throwing objects at Chapman and chasing him with knives; (3) the angry crowd evinced "intent to mutually assist against lawful authority" as demonstrated not only by the crowd's disregard for Officer O'Neil's authority, but also by their disregard for Chapman's rights; and, (4) there was "some degree of public terror," as all of these acts of violence took place on a public street and were not "of a more limited, private nature." See Blackledge, 740 So.2d at 298-99(¶ 9). Accordingly, the events preceding the injuries upon which Chapman based his claim constituted a riot. We must now determine whether the injuries made the basis of Chapman's claim arose out of or resulted from the riot.
¶ 23. Chapman argues that, even "if there had been a mob, Jeffery Chapman was injured by the inaction of Officer O'Ne[i]l rather than mob activity." The city argues that because C.W. was part of the rioting mob when he stole the patrol car and assaulted Chapman, Chapman's claim arose out of and resulted from the riot. We find the city's argument to be persuasive. It is not disputed that C.W. was part of the angry crowd that was attempting to injure Chapman, nor is it disputed that C.W.'s theft of the police car and assault upon Chapman was perpetrated as part of the riotous acts leading up to the vehicular assault. Even if Chapman's assertion that Officer O'Neil was negligent in leaving his patrol car unlocked with the engine running were true, the city is nonetheless immune from such negligence by virtue of the mob violence exemption. Whether Officer O'Neil decided to leave his engine running and doors unlocked based on his assessment of the riotous situation, whether he was simply complying with police policy, or whether he chose not to remove his ignition keys through carelessness and indifference independent of the riotous situation, our decision is not affected. We conclude that the vehicular assault committed upon Chapman by C.W. was part of the riotous acts and mob violence committed on the night in question. Accordingly, the injuries that Chapman suffered and the resulting claim arose out of and resulted from a riot within the meaning of section 11-46-9(1)(u), and the trial court did not err by granting summary judgment based on this provision.

CONCLUSION
¶ 24. We find that the trial court was correct in finding that there were no genuine issues as to whether the exemptions found in Mississippi Code Annotated section 11-46-9(1)(c)and (u) applied to immunize the City of Quitman from Chapman's claim based on the alleged negligent conduct of Officer O'Neil. We therefore affirm *479 the court's grant of summary judgment in favor of the city.
¶ 25. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] The deposition testimony of Jeffery Chapman is the only discovery material included in the record and, in addition to the pleadings contained therein, is the only evidence that we may properly consider. We note that Chapman included excerpts from the deposition of Officer Eric O'Neil in his "Record Excerpts" and referenced O'Neil's testimony in his brief; however, we cannot rely on this information as it does not appear in the record. If O'Neil's deposition testimony had been inadvertently or otherwise improperly omitted from the official record, the proper mechanism for correcting or modifying the record is by MRAP 10(e).
[2] Although a copy of C.W.'s statement to police was not made part of the record, Chapman was questioned during his deposition regarding C.W.'s statement that C.W. "confronted Jeff[e]ry Chapman as to why he hit my little sister, [R.W.]." Chapman denied hitting R.W. and also denied being aware of C.W.'s statement.
[3] Chapman named Clarke County, Mississippi and the Clarke County Sheriff's Department as additional defendants. These defendants, however, were dismissed pursuant to Chapman's ore tenus motion for dismissal without prejudice.
[4] The record is silent as to why Officer O'Neil chose to leave his patrol car running with the doors unlocked. Chapman points to no evidence, however, which explains how Officer O'Neil's decision was negligent much less reckless. Chapman presented no evidence to eliminate possible alternative bases for that decision, such as: leaving the engine running while outside of the vehicle during situations such as the one O'Neil encountered may have been mandated by official policy or O'Neil may have considered the possibility that the angry crowd might turn their aggression toward him and the need to have a quick avenue of escape in making his decision.
[5] Precedent of this Court and of the Mississippi Supreme Court has established that where the act or omission complained of falls within any of the exemptions found in section 46-11-9(1), the government is completely immune from any claims arising from that act or omission. See State v. Hinds County Bd. of Supervisors, 635 So.2d 839, 842 (Miss.1994); Pearl River Valley Water Supply Dist. v. Bridges, 878 So.2d 1013, 1020(¶ 32) (Miss.Ct.App.2004). We note that the applicability of one or more immunity provisions does not necessarily provide immunity for separate, independent acts or omissions that contribute to the damage or injury made the basis of a claim or claims. In this regard, each alleged negligent act or omission must be considered independently to determine whether immunity is appropriate under any MTCA exemption.