**John HANCOCK, Plaintiff**

v.

**CITY OF GREENWOOD, MISSISSIPPI, Officer Byron Granderson, in his individual and official capacity, and Officer Jesse Amos, in his individual and official capacity, Defendants.**

No. 4:12CV00055–M.

United States District Court,
N.D. Mississippi,
Greenville Division.

May 1, 2013.

Carlos Eugene Moore, Tangala Laniece Hollis, Moore Law Office PLLC, Grenada, MS, for Plaintiff.

Gary E. Friedman, Mark D. Fijman, Phelps Dunbar LLP, Jackson, MS, for Defendants.

### ORDER

MICHAEL P. MILLS, Chief Judge.

This cause comes before the court on the motions of defendants for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff John Hancock has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is, *inter alia,* a § 1983 excessive force case arising out injuries allegedly suffered by plaintiff during his arrest for a May 20, 2009 domestic violence incident. On that night, Greenwood's police dispatchers received a call from Lisa Chandler, the sister of plaintiff's former girlfriend Carol Silas, stating that plaintiff had beaten Silas and had fired a gun at Chandler's son. Believing that a potential hostage situation existed, Greenwood Police Officers Byron Granderson and Jesse Amos responded to the emergency call. After initially being denied entry into the house, the defendant officers entered the residence and, according to plaintiff, engaged in an aggressive arrest of him which included the use of pepper spray, a taser, and stepping on his hand. Plaintiff alleges that he suffered a broken wrist as a result of the arrest, for which he seeks recovery in the instant lawsuit.[1]

█ The court agrees with defendants that plaintiff's claims in this case clearly

---

1. Defendants contend that the hospital x-rays only showed a broken finger, but this dispute ultimately makes little difference to the court's analysis of the instant motion.

lack merit and most of them warrant little discussion. Plaintiff seeks recovery for false arrest, but the court concludes that this claim is barred by the fact that he was convicted on two counts of domestic violence relating to the May 2009 incident. In *Heck v. Humphrey,* 512 U.S. 477, 486, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the U.S. Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck* at 486–87, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383. In this case, plaintiff's false arrest claim arising out of his May 20, 2009 arrest is clearly inconsistent with the fact that he was convicted of domestic violence charges arising out of the events that night.

In arguing that *Heck* is inapplicable, plaintiff emphasizes that he was acquitted on kidnapping charges arising out of the incident, but the Fifth Circuit has emphasized that such a partial acquittal does not render *Heck* inapplicable. Specifically, the Fifth Circuit has stated that:

> [t]he claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for **any** of the charges made-here either disorderly conduct or resisting a search-then the arrest was supported by probable cause, and the claim for false arrest fails. (emphasis added)

*Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir. 1995). *See also Cormier v. Lafayette City–Parish Consol. Government,* 493 Fed. Appx. 578, 583 (5th Cir.2012)(same). Plaintiff was convicted on domestic violence charges arising out of the incident for which he was arrested, and it would clearly be contrary to *Heck* to allow him to pursue false arrest charges under these circumstances. Plaintiff's false arrest claim will therefore be dismissed without prejudice pursuant to *Heck,* and that claim may only be re-asserted if he is successful in having his domestic violence convictions reversed or otherwise expunged from his record.

■■■ Plaintiff's conviction on domestic violence charges is also fatal to his attempts to recover against defendants under Mississippi state law, since the Mississippi Tort Claims Act bars recovery "unless the [officer] acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss.Code Ann. § 11–46–9(1)(c). Thus, to recover in tort from a police officer or municipality, a plaintiff must establish (1) that he was not committing a crime; and (2) that police acted with reckless disregard for his safety. *See, e.g. Chapman v. City of Quitman,* 954 So.2d 468, 474 (Miss.Ct.App. 2007). A criminal conviction for an activity that shares some "causal nexus" with the plaintiff's arrest will trigger police immunity and bar recovery. *See Giles v. Brown,* 962 So.2d 612, 614–15 (2006). The court concludes that such a causal connection exists in this case, and it finds without merit plaintiff's argument that his supposed "intentional infliction of emotional distress" claim against the defendant officers somehow survives this bar. Plaintiff has presented no summary judgment evidence establishing fact issues regarding any such IIED claim, and, even if he had, he cites no authority suggesting that such a claim would be exempted from § 11–46–9(1)(c). Moreover, the court finds that the substantive merits of

plaintiff's MTCA claims is moot, since he has not responded to defendants' argument that he failed to comply with the procedural requisites for an MTCA claim. Finally, plaintiff has submitted no facts or arguments which would allow him to assert claims against the officers individually under Mississippi state law, outside the scope of the MTCA. Plaintiff's state law claims will therefore be dismissed.

The court notes that plaintiff's complaint includes language alleging federal Fourteenth Amendment "due process" and "equal protection" violations, but the complaint fails to even present a plausible theory as to how either of these constitutional provisions might be applicable. The U.S. Supreme Court made it clear in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) that excessive force claims are to be analyzed under a Fourth Amendment "objective reasonableness" standard, rather than under a Fourteenth Amendment due process analysis. Moreover, plaintiff does not even allege a coherent theory as to how his arrest was the result of an equal protection violation. The court therefore finds plaintiff's Fourteenth Amendment claims to be completely without merit.

The court now turns to the only claim asserted by plaintiff which merits some discussion: his Fourth Amendment excessive force claim against the defendant officers individually.[2] Plaintiff alleges that he suffered a broken wrist, and he contends that he suffered it as a result of the arrest in this case. Defendants contest this assertion, arguing that "[t]he reality is that immediately **before** the hostage standoff, Plaintiff was beaten up on the street by two of his former girlfriend's nephews, who have attested that **they** caused the injuries Plaintiff now blames on Police, because they were tired of plaintiff abusing their aunt."[3] Even accepting plaintiff's version of how he suffered his injuries as accurate, this is still insufficient to establish fact issues regarding his Fourth Amendment claim.

To succeed on an excessive force claim under the Fourth Amendment, "a plaintiff must demonstrate that (1) he suffered an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Bazan v. Hidalgo County*, 246 F.3d 481, 487 (5th Cir.2001). The Supreme Court emphasized in *Graham v. Connor* that the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene and must account for the fact that police officers are often forced to make split-second decisions about the amount of force neces-

**2.** The court initially notes that plaintiff has tacitly conceded any excessive force claims against the City of Greenwood, since he has not even attempted to establish that any Fourth Amendment violations were the result of an official city custom or policy under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

**3.** Defendants note that Carol Silas' nephews, Carl Silas and Dwayne Isaac, have attested that shortly before plaintiff's arrest, they had witnessed him abusing their aunt by throwing a cup of ice directly into her face and that they severely beat him, causing injuries to plaintiff's hand and arm prior to the standoff with police. In his attested statement Isaac stated as follows:

> We started jumping on him and kicking him and grabbing him and twisted his arm behind his back, twist his hand, uh, kicking him and ... jumping on him and he got up and hollered we be, we done broke his arm, his arm and all that stuff. Then he ran up the street.

Carol Silas provided a similar account in this regard, and it is thus apparent that there are very serious credibility concerns regarding plaintiff's version of the events of this case.

sary in a particular situation. *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865.

◼ Plaintiff's attempts to recover against the individual officers are made more difficult by the fact that his Fourth Amendment claims against them are subject to the defense of qualified immunity. Qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. *Easter v. Powell,* 467 F.3d 459, 462 (5th Cir.2006). To determine whether a defendant is entitled to qualified immunity, the court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *Easter,* 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the governmental official is entitled to qualified immunity. *Id.*

◼ The court concludes that, with regard to plaintiff's Fourth Amendment claims and defendants' related qualified immunity defense, the crucial and dispositive fact is that the defendant police officers acted in an objectively reasonable manner in responding to what they believed was a dangerous hostage situation. Indeed, the sole exhibit submitted by plaintiff buttresses this conclusion. That exhibit is a one-page affidavit from plaintiff's former girlfriend Silas, and the court does not find it to be at all helpful in establishing fact issues regarding plaintiff's Fourth Amendment claims. With regard to the police officers' actions, Silas asserts as follows in her affidavit:

Five minutes later the police arrived with Leisa Silas (Carl's Mother). They were beating on the door saying that it was the police. John told me not to open the door. That he didn't have to open the door, because he didn't do anything. After asking him 3 or 4 times he changed his mind and told me to open the door. I open[ed] the door the police came in; they said that they got a call that John was holding me and my son hostage with a gun to our head. They grabbed him off the couch and told him to get up and they put the handcuffs on him. Then they took him outside. I told the police that John never had me and my son held hostage with a gun to our head.

In the court's view, the crucial portion of Silas' affidavit is her statement that "I open[ed] the door the police came in; they said that they got a call that John was holding me and my son hostage with a gun to our head." Moreover, defendants note that the recording of the 911 call from Carol Silas' sister, Lisa Chandler, expressly referenced plaintiff having beaten Silas "real bad" and having fired a shot at Chandler's son:

Dispatcher: Greenwood Police Department, can I help you?

Lady: Yes, uh, this Ms. Whitehead?

Dispatcher: Un huh. [Affirmative]

Lady: Ms. Whitehead, this Lisa. Um, my sister stay on Gibbs Street right down there. She go with John Hancock in that house there by the alley ... Know the address.

Dispatcher: mmm hmm. [Affirmative]

Lady: But he up in there. He got a gun. He beating her up real bad and then he shot at my son.

Dispatcher: Wait a minute. Tonight, that, this, them ...

Lady: That's what the gun was about when I called the police. It right down there on Gibbs Street.

Considered in light of the threat that the defendant officers reasonably believed existed, even plaintiff's own description of the officers' conduct does not strike this court as depicting objectively unreasonable conduct on their part. In his deposition, plaintiff described the officers' actions as follows:

A: I was half sleeping. I mean, I was impaired, and I was half sleeping. After Officer Granderson grabbed me off the couch by my neck and threw me, Officer Amos sprayed me, and I was on the floor; and he told me, don't resist. I wasn't resisting. Officer Amor—when he stepped on my—that's when he stepped on my hand. He tased me. I was trying to get up after Granderson told me to get up and put my hands behind my back. I told him to get off my hand. You hurt my hand. Officer Granderson snatched me off the floor where Officer Amos was still standing on my hand.

The defendant officers provide a quite different description of their actions in arresting plaintiff, but, even accepting his version of events as accurate, the court is unable to conclude that this physical and aggressive arrest was objectively unreasonable under the facts of this case.

Clearly, officers who believe that they are facing a dangerous hostage situation, in which the lives of innocent victims are potentially only a trigger's pull from being ended, are more than justified in acting in an aggressive manner to prevent that from happening. The fact that the defendant officers did, in fact, believe such a dangerous hostage situation existed is overwhelmingly supported by the evidence in this case. The court notes that the parties spend a great deal of time arguing about whether plaintiff's lengthy history of domestic violence (as evidenced by multiple criminal convictions) is admissible and relevant to the present motion. It appears that defendants have the better of the arguments on this point, but the court ultimately concludes that this history merely constitutes cumulative evidence in support of defendants' position in this case. In the court's view, even if plaintiff had no history of prior domestic violence, the defendant officers would still have acted in an objectively reasonable manner in this case based solely upon the reports of an active hostage situation, involving the firing of a weapon.

It is certainly unfortunate that plaintiff suffered physical injuries, and the court will assume for the sake of this motion that he sustained them at the hands of the defendant police officers, rather than at the hands of vengeful relatives of his former girlfriend. Even so assuming, however, the risk that plaintiff would suffer such an injury after having his hand stepped upon is greatly outweighed by the risk that he would use that hand to fire a deadly weapon. Once again, Lisa Chandler told the police dispatcher that plaintiff not only had a gun, but that he had actually fired a shot at her son. Moreover, plaintiff's own testimony reflects the fact that the defendant officers' paramount concern was locating the gun and preventing plaintiff from using it. Plaintiff testified as follows in his deposition:

Q: Do you remember them asking you about where the guns were?

A: They asked me did I have a gun. I told them no.

Q: Did they ask you more than once?

A: They asked me twice.

The court notes that plaintiff's deposition testimony is of rather suspect credibility since, within the same deposition, he would frequently refer to a lack of memory regarding events which he had previously

testified occurred. With regard to the officers asking about a gun, for example, plaintiff later testified that:

Q: You testified that at some point they asked you where is the gun, is that correct?

A: I can't recall, sir.

Plaintiff concedes that he was drunk on the night in question, but this does not explain why he would recall certain events at one point in his deposition, while professing ignorance of the same events later in that deposition. Given the suspect reliability of plaintiff's deposition testimony, the court is perhaps being generous in crediting his version of events. Regardless, even accepting plaintiff's version of events as accurate, the court concludes that the officers acted in an objectively reasonable manner in this case. This finding of objective reasonableness is fatal to plaintiff's Fourth Amendment claims, and defendants' motion for summary judgment is therefore due to be granted. Plaintiff's false arrest claims will be dismissed without prejudice under *Heck,* and his remaining claims will be dismissed with prejudice.

It is therefore ordered that defendants' motion for summary judgment is granted.

A separate judgment will be issued this date, pursuant to Fed.R.Civ.P. 58.

### *JUDGMENT*

For the reasons given in the court's order issued this date, it is hereby ordered and adjudged that this case is dismissed.