# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01270-SCT

*MISSISSIPPI DEPARTMENT*
*OF PUBLIC SAFETY*

*v.*

*SAMMIE L. DURN*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/21/2002 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN E. GRIFFITH |
| | CHRIS POWELL |
| ATTORNEY FOR APPELLEE: | J. KIRKHAM POVALL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/31/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER AND GRAVES, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.    Sammie L. Durn brought suit against the Mississippi Department of Public Safety and State Trooper Reginald Lantern pursuant to the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 & Supp. 2003), for injuries sustained in a motor vehicle accident with Lantern.[1] The circuit court found that Lantern acted in reckless disregard of Durn's safety and well-being and that Durn had made an improper left turn. The circuit court awarded Durn $160,453 in damages.    The

---

[1] Lantern was dismissed from the case.

Department of Public Safety appeals, contending that Lantern's actions were protected by the police exemption under the MTCA, and, alternatively, that the circuit court abused its discretion in awarding damages. We affirm liability under the MTCA but reverse and remand because, after finding that Durn had made an improper left turn, the circuit court did not determine the percentage of Durn's comparative fault and reduce the amount of the actual damages awarded.

**FACTS**

¶2. At 6:30 a.m. on October 11, 1999, Durn was driving south on a two-lane area of U.S. Highway 49 north of Indianola. He was headed to the school bus garage to warm up his bus before picking up the children along his bus route. As Durn was driving south on Highway 49, State Trooper Lantern was headed north in his patrol car. Soon after the two passed each other, Lantern noticed a vehicle traveling southbound at a speed in excess of the posted speed limit of fifty-five miles per hour. He made a u-turn and pursued the speeding vehicle.

¶3. While in pursuit of the speeding vehicle, Lantern eventually came upon Durn. He attempted to pass Durn using the northbound lane, but as he started to overtake Durn, Durn turned left across the northbound lane to enter the lot leading to the bus garage. Lantern collided with the driver-side rear quarter of Durn's truck, pushing the truck 178 feet and throwing Durn from his vehicle. The skid marks left by Lantern's vehicle were completely in the northbound lane. Durn was cited for having an improper tag on his vehicle.

¶4. At trial, Durn and Lantern had different accounts of what transpired before the accident. Durn testified that he had his turn signal on before attempting to turn left. He checked his rearview mirror and did not notice a vehicle approaching from either direction. He never heard a siren and also stated that he never noticed the speeding vehicle Lantern was pursuing. Durn's expert witness testified that Lantern was traveling eighty-one miles an hour before the accident.

¶5. Lantern testified that he activated his wig-wag lights as soon as he made the u-turn. He claimed he kept his vehicle at fifty-five miles an hour during the pursuit and that he had already overtaken the northbound lane, attempting to pass Durn when Durn crossed over into the northbound lane. He also stated that Durn began driving in the northbound lane fifty feet before attempting to turn into the garage lot. He did not recall if Durn used his turn signal.

¶6. The circuit court found that Lantern acted in reckless disregard of others' safety and well-being and awarded Durn $8,953 in medical bills, $1,500 in lost wages, $2,000 for the loss of the truck, and $148,000 for pain and suffering, emotional distress, and permanent disability. The circuit court found that Lantern was in pursuit of a speeding vehicle, that the accident occurred in an area where there are numerous businesses, and that visibility was limited due to the time of day. It also found that, although Durn made an improper left turn, he did not engage in any illegal activity and he had activated the left-hand turn signal prior to turning. The circuit court finally found that Lantern was operating his vehicle at an excessive speed. The Department of Public Safety appeals the circuit court's ruling.

## DISCUSSION

¶7. Cases brought under the MTCA are tried without a jury. Miss. Code Ann. § 11-46-13 (Rev. 2002). The circuit court has the sole authority for determining the credibility of witnesses when it sits as the trier of fact. *City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (Miss. 2003). A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible , and reliable evidence. *Maldonado v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000). Questions concerning the application of the MTCA are reviewed de novo. *Donaldson v. Covington County*, 846 So. 2d 219, 222 (Miss. 2003). Immunity is a question of law. *Mitchell v. City of Greenville,* 846 So. 2d 1028, 1029 (Miss. 2003).

3

## I.   WHETHER THE CIRCUIT COURT ERRED IN HOLDING THAT OFFICER LANTERN'S ACTIONS WERE NOT PROTECTED BY THE POLICE EXEMPTION OF THE MISSISSIPPI TORT CLAIMS ACT.

¶8.    The Department of Public Safety argues that it is entitled to immunity because: (1) Lantern did not act in reckless disregard of Durn's safety and well-being; and (2) Durn performed an illegal turn which was the cause of the accident.

¶9.    The MTCA provides the exclusive remedy for tort actions brought against a governmental entity or its employees.  Miss. Code Ann. § 11-46-7(1) (Rev. 2002).  Although the MTCA waives sovereign immunity for tort actions, it also prescribes certain exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity:

>    (1)    A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . .
>
>        (c)    Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]

Miss. Code Ann. § 11-46-9 (Rev. 2002).

¶10.    To be entitled to immunity, the officer must not have acted with reckless disregard for the safety of others.  Reckless disregard is more than mere negligence, but less than an intentional act.  *City of Jackson v. Brister*, 838 So.2d 274, 281 (Miss. 2003).

>    While we agree that reckless disregard would encompass gross negligence, we hold that reckless disregard is a higher standard than gross negligence by which to judge the conduct of officers.

4

"Disregard" of the safety of others is at least negligence if not gross negligence. Because "reckless" precedes "disregard," the standard is elevated. As quoted above from Black's Law Dictionary, "reckless," according to the circumstances, "may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive or negligence." In the context of the statute, reckless must connote "wanton or willful," because immunity lies for negligence. And this Court has held that "wanton" and "reckless disregard" are just a step below specific intent.

"Our case law indicates 'reckless disregard' embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act."

*Lipsey,* 834 So. 2d at 691-92 (citations omitted). "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999).

¶11. We recently upheld a finding of reckless disregard when officers caused a suspect to collide with a third party while pursuing her through a congested area at high speeds after she attempted to pass a forged check at a bank. *Brister,* 838 So. 2d at 274. The pursuit took place in a heavily populated area that included apartment complexes, single-family housing and condominiums, a park, and an elementary school. *Id*. at 280. The officers drove at speeds in excess of twenty miles per hour over the posted speed limit while the suspect was traveling at speeds in excess of seventy miles per hour. *Id*. The accident occurred when the suspect crested into an intersection where her visibility was limited. We anchored our decision on the fact that the officers involved in the chase were violating a departmental order that a pursuit may only be initiated when a suspect's escape is more dangerous to the community than the risk posed by the pursuit. *Id*. We noted that the officers were on the scene before the suspect left the parking lot, and they had the opportunity to either block the suspect in her parking space or get her tag number and apprehend her later. *Id*.

5

¶12.    In *Brister*, we cited with approval the factors listed in *District of Columbia v. Hawkins*, 782 A.2d 293 (D.C. Ct. App. 2001), to determine whether an officer acted in reckless disregard of others while pursuing a third party:

> (1)    *Length of chase.*  In the present case, Lantern's pursuit of the speeding vehicle lasted only seconds.
>
> (2)    *Type of neighborhood.*  The area was a congested business area.
>
> (3)    *Characteristics of the streets.*  The stretch of highway where the accident took place was straight and flat.
>
> (4)    *The presence of vehicular or pedestrian traffic.*  The area was congested.
>
> (5)    *Weather conditions and visibility.*  Visibility was limited by the darkness at 6:30 a.m.
>
> (6)    *The seriousness of the offense for which the police are pursuing the vehicle.*  Lantern was pursuing a speeding vehicle at the time of the accident.

¶13.    A review of our case law illustrates that we find reckless disregard when the "conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Maldonado*, 768 So. 2d at 910-11.

¶14.    We affirmed a finding of reckless disregard when an officer suddenly turned his vehicle in front of oncoming traffic without having his headlights on or using his blue lights or siren. *Lipsey*, 834 So. 2d 687 (Miss. 2003).  The officer received a dispatch to an auto burglary at 1:30 a.m.  He elected to respond although he was not the primary or secondary unit dispatched.  We noted that the officer had been involved six prior accidents and that the present accident was investigated by the department, which concluded that the officer failed to yield the right of way.

¶15.     We also found reckless disregard when an officer was driving twenty-seven miles per hour over the posted speed limit without using his siren or blue lights while on his way to dinner when he collided with a vehicle exiting a parking lot. *City of Jackson v. Perry*, 764 So. 2d 373 (Miss. 2000). The officer testified that he customarily drove without knowing how fast he was traveling. *Id*. at 377.

¶16.     In *Maye v. Pearl River County*, 758 So. 2d 391 (Miss. 1999), we found an officer's actions rose to the level of reckless disregard because he showed a conscious disregard for the safety of others when he backed up an incline entrance to a parking lot, knowing he could not be sure the area was clear. While the officer was backing up the entrance, a driver entered the lot from the road and noticed the police car backing towards her. *Id*. at 392. The driver could not back up and began using her horn to notify the officer that she was behind him. *Id*. at 394. The officer never stopped and ultimately collided with the vehicle. The officer testified that he could not see the road from the parking lot because his view was obstructed.

¶17.     We found that a circuit court erred as a matter of law when it found an officer acted in reckless disregard when he caused an accident at a dangerous intersection. *Maldonado*, 768 So. 2d at 906. There, an officer caused an accident when he pulled into an intersection where his view of oncoming traffic was obstructed by a water tower. *Id*. at 908. The officer checked for oncoming traffic before proceeding but did not see the plaintiff's vehicle until immediately prior to impact. *Id*. We found the officer was aware of the nature of the intersection and took steps to avoid the collision. *Id*. at 910.

¶18.     We conclude that the circuit court did not err in finding Lantern acted in reckless disregard of the safety and well-being of others. The circuit court was in the best position to weigh the credibility of the witnesses. There were inconsistencies in Lantern's testimony concerning his speed that cast doubt on his

entire testimony. The circuit court found evidence that satisfied numerous *Brister* factors and determined that Lantern appreciated the unreasonable risk associated with attempting to overtake a vehicle that indicated it was turning, yet still acted in deliberate disregard of that risk.

¶19. The Department also attacks the judgment on the grounds that it is immune from liability because Durn was engaged in illegal activity that caused the accident. Miss. Code Ann. § 11-46-9. The Department argues that Durn was engaged in criminal activity at the time of his injury, § 11-46-9(1)(c), because he committed a misdemeanor traffic offense by making a left turn when it was not reasonably safe to do so.[2]

¶20. The MTCA's police exemption "is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." *Perry*, 764 So. 2d at 379. If the victim is engaged in an illegal activity that is a cause of the harm, the government is immune from liability. *Williams v. City of Jackson*, 844 So. 2d 1161, 1164 (Miss. 2003). It must be shown that the victim was engaged in criminal activity that has a causal nexus to the wrongdoing of the tortfeasor. *Perry*, 764 So. 2d at 379. "Where an officer has probable cause to arrest and proceeds to do so, there is the requisite nexus between criminal activity and the action causing injury." *Bridges v.*

---

[2] No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if a pedestrian may be affected by such movement or after giving an appropriate signal in the manner provided in this article in the event any other vehicle may be affected by such movement. A signal of intention to turn right or left shall be given continuously for a reasonable distance before turning.

Miss. Code Ann. § 63-3-707 (Rev. 1996). It is a misdemeanor if someone fails to perform what is required by § 63-3-707. Miss. Code Ann. § 63-3-201.

*Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001). The criminal activity supporting the exemption must be more than fortuitous, but it applies to misdemeanors as well as felonies. *Id*. Misdemeanor traffic offenses are criminal activities within the statute. *Perry*, 764 So. 2d at 373.

¶21. In *Perry*, we found the City of Jackson was not entitled to immunity when the plaintiff was driving without a driver's license at the time of the accident. *Id*. at 379. We noted that the plaintiff was neither charged with a crime nor issued a citation and that driving without a license was not specifically designated as a crime in the Mississippi Code. *Id*. at 378. We found the City was not entitled to immunity because the officer's conduct had nothing to do with the criminal activity involved. *Id*. at 379.

¶22. We upheld summary judgment in favor of the City of Jackson when one of its fire engines collided with a vehicle at an intersection, killing the driver of the vehicle. *Williams v. City of Jackson*, 844 So. 2d 1161 (Miss. 2003). Williams's blood alcohol content was .20% at the time of the accident. Williams's estate argued that he was stopped at the intersection when the fire engine ran into him. *Id*. at 1165. The City argued, and witnesses testified, that the collision occurred in the middle of the intersection when Williams attempted to beat the fire engine through the intersection. *Id*. We stated:

> Even had plaintiff's contention been supported by facts, it would not change the fact that Williams was intoxicated. It is therefore immaterial because it could have had no effect on the outcome of this action. Operating a vehicle involves both the moving and stopping of a vehicle and when these are done under the influence of alcohol, it is considered criminal activity, which in this instance, operates to limit the duty owed by police and fire personnel under § 11-46-9(1)(c).

*Id*. at 1165. We found a clear nexus between the criminal activity and the injury suffered by him. "Had he not been driving while intoxicated, Williams would have not attempted to beat the fire truck through the intersection and would not have been killed." *Id*.

¶23.   Unlike *Perry*, Durn's actions are designated as a criminal offense. The skid marks at the accident show that Lantern was completely within the northbound lane before the accident occurred. According to the logic of *Williams*, Durn would not have been injured if he had not made an improper left turn. However, we cannot equate making a left turn with operating a vehicle with a .20% blood alcohol content level. Durn's left turn was not the criminal activity that caused Lantern to give chase. As in *Perry*, the officer's conduct had nothing to do with the alleged criminal activity. Lantern's pursuit was caused by another speeding vehicle; Durn's action was merely fortuitous.

> [The statute] is not designed to protect grossly negligent or intentional tortfeasors from liability where the fact that the victim is engaged in criminal activity is merely fortuitous and has no relation to the transaction out of which the liability would arise. It would be anomalous to suggest, for example, that a recklessly negligent officer who runs down a pedestrian on the sidewalk, escapes liability on a showing that the pedestrian was then and there in possession of untaxed whiskey.
>
> This Court construes statutes "to produce a harmonious conclusion consistent with common sense and natural justice." *Middleton v. Lincoln County*, 122 Miss. 673, 84 So. 907, 909 (1920). Because the Officer's conduct did not have anything to do with the criminal activity involved here, the City of Jackson's argument is without merit.

*Perry*, 764 So. 2d at 378-79.

¶24.   It would defy common sense and natural justice for us to hold that Durn's alleged improper left turn constituted criminal activity which entitled the Department to immunity. There was no credible evidence that Lantern had his siren on when he attempted to pass Durn. The physical evidence at the scene of the accident shows that Lantern was traveling at a high rate of speed. We affirm the circuit court's finding that Durn was not engaged in criminal activity at the time of the accident.

## II.   WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN DETERMINING DAMAGES.

¶25.    The Department, while not conceding liability, argues that the circuit court abused its discretion by (1) awarding $148,000 in damages for pain and suffering, emotional distress, and permanent disability when the amount was not supported by the evidence, and (2) not determining the extent of Durn's negligence. It asks us to remand the issue of liability for a determination of comparative fault and to reverse the damages award by reducing the amount with an appropriate remittitur.

¶26.    The Department argues that the circuit court's award of $148,000 for pain and suffering, emotional distress, and permanent disability was arbitrary and based on speculation. It contends that the amount is twelve times the amount of any measurable damages, that the circuit court offered no explanation as to how it calculated the amount, and that the amount was not supported by any medical evidence.

¶27.    We determine on a case-by-case method whether an award is excessive. *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 621 (Miss. 2001).

> [I]t is primarily the province of the jury [and, in a bench trial, the judge] to determine the amount of damages to be awarded[. T]he award will normally not be 'set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" *Foster v. Noel*, 715 So. 2d 174, 183 (Miss. 1998), quoting *Harvey v. Wall*, 649 So.2d 184, 187 (Miss. 1995). We view the evidence in the light most favorable to the verdict.

*Brandon HMA, Inc.*, 809 So. 2d at 621.

¶28.    We have upheld awards that were forty times the amount of the medical damages, *Edwards v. Ellis*, 478 So. 2d 282 (Miss. 1985); fourteen times the amount of damages, *Purdon v. Locke*, 807 So. 2d 373 (Miss. 2001); and thirty-eight times the amount of damages, *Gatewood v. Sampson*, 812 So. 2d 212 (Miss. 2002). We reduced an award of $532,000, of which almost $500,000 was for future pain and suffering, to $232,000, finding that the evidence for pain and suffering did not justify the amount of the award. *Entergy Miss. Inc. v. Bolden*, 854 So. 2d 1051 (Miss. 2003) In *Lipsey*, we upheld an

11

award of $25,000 for past physical pain and suffering and mental anguish. 834 So. 2d at 694. In *Perry*, we upheld an award of $100,000 for pain and suffering when the plaintiff was confined to a wheelchair for four months after the accident and had to relearn how to walk. 764 So. 2d 380.

¶29. At trial, Durn testified that he still suffered from headaches, had muscle spasms in his legs, and that the left side of his body was still giving him problems. He also testified that he was so stressed about not being able to support his family because of his inability to work during his recuperation that he considered leaving his wife, and that he was constantly crying. William Barr, M.D., testified that Durn had a 10% permanent physical impairment, and that he would continue to have pain whenever he engaged in heavy physical activities. Durn's wife testified that he was unable to work the odd jobs he performed on the side to earn extra money, such as cutting trees, yard work, plumbing, and laying carpet. Durn had a life expectancy of 35.1 years.

¶30. The Department also argues it was error for the circuit court not to take Durn's negligence into account when awarding damages. A circuit judge, sitting as a trier of fact, is accorded great deference but his finding is treated the same as a jury verdict when he or she ignores the weight of the evidence. *Jackson v. Daley*, 739 So. 2d 1031, 1039 (Miss. 1999). We have held that "[a] party has a right to have jury instructions on all material issues presented in the pleadings or evidence." *Glorioso v. Young Mens Christian Ass'n of Jackson*, 556 So. 2d 293, 295 (Miss. 1989). A party is entitled to a comparative negligence instruction only if credible evidence supports the instruction. *Haggerty v. Foster*, 838 So. 2d 948, 955 (Miss. 2002).

¶31. The Department affirmatively pled comparative negligence as a defense in its answer and placed evidence of Durn's negligence before the circuit court. The circuit court heard testimony that Durn began

to turn fifty feet before he reached the lot entrance, and that Lantern had already overtaken the northbound lane attempting to pass when Durn began to make his left turn.

¶32.    We find the circuit court did not abuse its discretion as to the amount of damages. Durn's emotional well-being and ability to do different types of physical labor was well documented. Durn also suffered a 10% impairment that would limit his ability to perform the jobs he performed outside of his regular employment.

¶33.    However, we find the circuit court failed to determine if comparative fault should be assigned to Durn, and, whether the award of damages should be reduced accordingly. We therefore reverse the judgment and remand to the circuit court.

## CONCLUSION

¶34.    We affirm the circuit court's findings that Lantern acted in reckless disregard of Durn's safety and well-being and that Durn was not engaged in criminal activity at the time of the accident. We reverse the judgment and remand this case for the circuit court to determine Durn's comparative fault, to consider comparative fault in awarding damages, and to make a new award.

¶35.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH, P.J., COBB AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EASLEY AND CARLSON, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**