952 So.2d 1050 (2007)
Mary Beth BROOME, Appellant
v.
CITY OF COLUMBIA, Mississippi, Appellee.
No. 2005-CA-00605-COA.
Court of Appeals of Mississippi.
March 27, 2007.
*1051 S. Christopher Farris, attorney for appellant.
Lawrence Elder Hahn, William C. Callender, Columbia, attorneys for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
KING, C.J., for the Court.
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted in lieu thereof. Following a bench trial, Mary Beth Broome appeals the trial judge's order holding that the City of Columbia was entitled to immunity under Mississippi Code Annotated Section 11-46-9 and, therefore, was not liable for injuries that Broome sustained when a suspect being pursued by a Columbia Police Department officer struck her car. The sole issue before this Court on appeal is whether the trial judge's findings are supported by substantial evidence and are consistent with Mississippi's current case law.
¶ 2. Although this Court disagrees with the reasoning employed by the trial court to reach the conclusion that the pursuit was justified, for the reasons stated herein, the judgment is affirmed.

FACTS
¶ 3. On June 21, 2003, Johnny Ray Sims was involved in a domestic dispute with his girlfriend, Angeline Robinson. Both Robinson and her landlord, Vance Berry, signed affidavits attesting to the altercation. The Columbia Police Department then issued two misdemeanor warrants for Simsone for domestic assault and one for trespassing.
¶ 4. At approximately 11:25 a.m. on Saturday, September 13, 2003, Sergeant Pearlie Hendricks of the Columbia Police Department spotted Sims smoking a cigarette outside the Auto Zone in Columbia, Mississippi. As Hendricks testified during the bench trial, she had known Sims his entire life and previously had arrested him; therefore, she recognized him and recalled the outstanding warrants. Hendricks contacted the dispatcher to confirm that the warrants were still outstanding and then contacted her supervisor for backup.[1] As Hendricks passed Auto Zone a second time, she noted that Sims was no longer outside. Believing that he had entered the store, she pulled into the parking lot[2] next to a brown Ford.
¶ 5. As Hendricks exited her car, she glanced into the brown Ford and noticed Robinson in the passenger seat. She also noted that Sims was in the driver's seat, attempting to escape her notice by leaning forward. Hendricks asked Robinson to roll down the window, but the window mechanism was broken, so Robinson opened the passenger door instead. When Robinson opened the door slightly, Hendricks told Sims that she needed to talk to him. While attempting to speak to Sims, Hendricks noticed an open alcoholic beverage container in the car near Sims. Sims then told Robinson to close the door, which she did, and Sims backed out into the street and drove off, tires squealing.
*1052 ¶ 6. Hendricks got back into her car and pursued Sims. Hendricks testified that she engaged in a "slack pursuit," in which she maintained a distance of approximately one-quarter of a mile between her patrol car and Sims' car. Hendricks further testified that she maintained a top speed of approximately fifty miles per hour in a thirty-five mile per hour zone as she pursued Sims with her lights and siren on. The chase ended less than two minutes and one mile after it began when Sims ran a red light and struck two cars and a tree. With his vehicle apparently disabled, Sims fled on foot. Hendricks followed suit. Sims was detained, arrested, and charged with a number of infractions, including driving with a suspended license due to a prior DUI conviction.
¶ 7. Broome was the driver of the first vehicle that Sims struck when he ran the red light. As a result of the accident, Broome suffered a ruptured disk in her neck that required surgery. Broome filed suit against the City of Columbia, alleging that the City, through its police officers, was negligent both in choosing to pursue Sims and in continuing the pursuit through heavily traveled areas of Columbia at an increased risk to the public.
¶ 8. The trial court held a bench trial pursuant to the Mississippi Tort Claim Act. See Miss.Code Ann. § 11-46-13(1) (Rev. 2004). The trial court heard evidence on the specifics of the events leading up to the pursuit. The trial court heard further evidence on the conditions that day (a light rain), the amount of traffic on the roads (light to moderate), and the involvement of Hendricks' supervisor in the pursuit (he passed Sims going in the opposite direction near the end of the pursuit). The trial court also had the opportunity to view the videotape of the pursuit, the recording of which was triggered by Hendricks' use of her light and sirens, although the tape did not activate immediately and contained no sound. Finally, the court heard expert testimony on the issue of reckless disregard and whether Hendricks' decision to pursue Sims violated the standard for sovereign immunity set forth in Mississippi Code Annotated Section 11-46-9(1)(c).
¶ 9. The trial court held that, upon review of the pursuit policy and applicable case law, neither Hendricks nor any other city employee involved in the chase acted in reckless disregard for the safety of innocent third parties. The trial court also found that Hendricks' pursuit was appropriate and lawful under the circumstances and was compliant with the City's pursuit policy. Accordingly, the City was entitled to sovereign immunity and was exempt from liability under Mississippi Code Annotated Section 11-46-9(1)(c).

STANDARD OF REVIEW
¶ 10. A trial judge's findings of fact following a bench trial are subject to the same deference as a chancellor's findings of fact and will not be disturbed on appeal as long as those findings are supported by substantial, credible and reasonable evidence. See, e.g., City of Jackson v. Brister, 838 So.2d 274, 277-78 (¶ 13) (Miss. 2003). Issues of law, however, are reviewed under a de novo standard. Id.

ANALYSIS
¶ 11. Mississippi Code Annotated Section 11-46-9(1)(c) provides as follows:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . .
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee *1053 acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss.Code Ann. § 11-46-9(1)(c) (2002) (emphasis added). "Reckless disregard" is defined as "more than mere negligence but less than an intentional act." Brister, 838 So.2d at 280 (¶ 23). This standard requires a finding that the employee or entity in question acted with "an appreciation of the unreasonable risk of danger involved coupled with a conscious indifference to the consequences that were certain to follow." Davis v. Latch, 873 So.2d 1059, 1062 (¶ 15) (Miss.Ct.App. 2004). Reckless disregard "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Turner v. City of Ruleville, 735 So.2d 226, 230 (¶ 18) (Miss. 1999) (citation omitted).
¶ 12. The sole issue raised on appeal is whether the trial court's findings are supported by substantial evidence and whether the decision comports with precedent set by Mississippi's appellate courts. The trial court applied its findings of fact to the law set forth in a line of Mississippi police pursuit casesspecifically City of Jackson v. Brister, 838 So.2d 274 (Miss. 2003) and Mississippi Dep't. of Pub. Safety v. Durn, 861 So.2d 990 (Miss. 2003). While the trial court did not enumerate the factors listed in both Brister and Durn, the court did, nevertheless, evaluate the types of evidence that those cases found relevant to a determination of reckless disregard.
¶ 13. While the Court's review of the trial transcript and other documents that form the record on appeal raises some questions with regard to the trial court's conclusion that pursuing Sims to serve the warrants did not constitute reckless disregard, the Court holds, for reasons other than those relied upon by the trial court, that the trial court's ruling should be affirmed. See Valley Forge Ins. Co. v. Strickland, 620 So.2d 535, 539 (Miss. 1993)(holding that "[w]here a lower court reaches the proper result, albeit through no fault of its own, we will not reverse.").
¶ 14. Both Brister and Durn list the following factors to be considered "to determine whether an officer acted in reckless disregard of others while pursuing a third party": (1) length of chase; (2) type of neighborhood (commercial, residential, etc.); (3) characteristics of the street (topography, visibility, etc.); (4) the presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; and (6) the seriousness of the offense for which the police are pursuing the vehicle. Durn, 861 So.2d at 995 (¶ 12) (citing Brister, 838 So.2d at 280 (¶ 22)). The trial court, in its opinion, relied in large part on the factual distinctions between Brister and the present case and found that the record supported a finding that the City of Columbia was entitled to sovereign immunity. Specifically, the trial court cited the following factors: Hendricks' experience on the force, Hendricks' familiarity with the pursuit route, the mix of commercial and single family residential properties on the pursuit route (as opposed to a largely residential area), the parameters of the City's pursuit policy, Hendricks' ability to maintain control of her vehicle, the lack of traffic, Hendricks' belief that Sims was under the influence of alcohol (based on her observation of an open container in the car), and the existence of the outstanding domestic violence warrant that prompted the pursuit.
¶ 15. In its review of the record, the Court finds that Hendricks' decision to pursue Sims to serve the outstanding misdemeanor warrants indicates poor judgment on her part. Hendricks testified that, although she intended to place Sims *1054 under arrest, she intended to request that he follow her to the station to "take care of the warrants" rather than handcuffing him and escorting him to the station. Additionally, the victim of his crime and the only person to whom he apparently was a danger, Robinson, was a passenger in the car. Hendricks testified that upon approaching the Ford, she realized that Sims and Robinson had reconciled. Without evidence of the open container and suspicion that Sims was driving under the influence, the Court's review of the Brister factors may well have resulted in a finding that Hendricks and the Columbia Police Department acted in reckless disregard in pursuing Sims to serve the outstanding misdemeanor warrants.
¶ 16. The fact, however, that she saw an open container and had a reasonable suspicion that Sims was driving under the influence is sufficient to justify her decision to pursue Sims. Hendricks testified that she saw the open container in the car in close proximity to Sims during her initial contact with him at Auto Zone. She further testified that she had known Sims his entire life and that Sims was drunk when she arrested him on a previous occasion. She also testified that she suspected he would fail a Breathalyzer test. Finally, the record indicates that Sims was, in fact, charged with driving with a suspended license due to a prior DUI conviction.
¶ 17. In Turner v. City of Ruleville, 735 So.2d 226, 229 (Miss. 1999), a motorist injured in an accident involving a drunk driver sued the City of Ruleville alleging that the City was negligent. Specifically, the complainant alleged that an officer stopped the drunk driver for erratic driving and then permitted him to continue operating the vehicle, knowing that the driver was intoxicated. Shortly thereafter, the driver struck the complainant. The City asserted a sovereign immunity defense, and the trial court granted the City's motion to dismiss. The Supreme Court of Mississippi reversed the order granting the motion to dismiss and held that the allegations of the complaint, if true, were sufficient to constitute reckless disregard. Turner, 735 So.2d at 230 (¶¶ 18-20).
¶ 18. One of the factors to be considered in ascertaining whether an officer acted in reckless disregard in pursuing a suspect is "the seriousness of the offense for which the police are pursuing the vehicle." Brister, 838 So.2d at 280 (¶ 22). Turner supports the proposition that an officer who releases an impaired driver shows a reckless disregard for the safety of others. Accordingly, Hendricks acted properly in attempting to stop Sims, as he was driving recklessly and she suspected him of DUI.
¶ 19. Having found that Hendricks did not act in reckless disregard in her decision to pursue Sims, the Court reviews the trial court's remaining findings of fact under the "substantial, credible, and reasonable" standard and the trial court's application of the remaining Brister factors under the de novo standard. The Court finds no reason to disturb the trial court's conclusions with regard to the length of the chase, the characteristics of the neighborhood, the presence of vehicular and pedestrian traffic, and the visibility of both Hendricks and Sims. Those findings are supported by substantial evidence in the record. Further, applying those facts to the Brister factors, the Court holds that the trial court properly determined that the pursuit itself and Hendricks' behavior during the pursuit did not constitute reckless disregard. Accordingly, the trial court properly held that the City of *1055 Columbia was entitled to sovereign immunity under Mississippi Code Annotated Section 11-46-9(1)(c).
¶ 20. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] According to Hendricks' testimony, police procedure generally required that an officer wait for backup before making contact with a suspect.
[2] The photographic exhibits from the trial indicate that the "parking lot" was not a typical parking lot. Rather, the parking lot consisted of a row of parking spaces directly in front of the store and adjacent to the street. Accordingly, when Sims backed up to leave, he backed directly into the street.