KITCHENS, Justice,
for the Court.
¶ 1. Kenneth Wilson was convicted of the murder of his girlfriend, Lisa Williams. Prior to Williams’s murder, officers of the City of Laurel Police Department were dispatched to two separate disturbances involving Wilson, but no arrest was made. Williams’s wrongful-death beneficiaries brought suit against the City of Laurel, alleging that the City was liable for failing to arrest Wilson. Following a bench trial, the circuit judge found for the plaintiffs and awarded damages of $75,000. The City of Laurel now appeals.

FACTS

¶ 2. At approximately 8:30 p.m. on July 2, 2003, Officers Styron Keller and Shane Valentine of the Laurel Police Department were dispatched to an alleged domestic dispute at Lisa Williams’s residence. Neither Officer Keller nor Officer Valentine noticed anything unusual about the appearance of Williams or Kenneth Wilson, and there was no indication that either of them had been “struck, hit or harmed in any way....” After making these initial *1173 observations, the officers separated Williams and Wilson. Officer Keller interviewed Wilson, while Officer Valentine interviewed Williams.
¶ 3. Officer Keller testified that Wilson was calm and cooperative throughout the interview. During this interview, Officer Keller noticed a nick on one of Wilson’s right fingers. When asked about the abrasion, Wilson explained that he did not know he had been cut, and that he likely had received it at work. However, Wilson admitted that he and Williams had gotten into a “tussle,” and that Williams had hit him in the head.
¶4. Rika Carmichael, Williams’s niece and roommate, testified that she had been in another room when Wilson and Williams began fighting. Carmichael “heard a lot of bumping” from the room, so she opened the door and found Wilson on top of Williams on the bed. Carmichael added that there were no signs of injury to Williams, other than “her hair [being] messed up.” Carmichael then directed Williams’s fourteen-year-old son to call the police, and within approximately ten minutes, the officers arrived at the scene.
¶ 5. After the field interviews had been performed, Officer Keller told Wilson and Williams that he had probable cause to arrest both of them. Officer Keller asked Williams and Wilson whether they wished to press charges against each other, and both indicated that they did not wish to do so. Both Williams and Carmichael indicated that they simply wanted Wilson to leave the residence.
¶ 6. Wilson informed Officer Keller that he intended to go to the home of Williams’s mother, Annie Walker, where he occasionally went when he and Williams got into a fight. Officers Keller and Valentine watched Wilson pack a bag, with Williams’s assistance, and the officers stayed at the scene until Wilson had left the residence on foot.
¶7. Carmichael testified that after the officers had left the scene, Wilson returned to the house and asked for a ride. Carmichael then drove Wilson to Walker’s house. Carmichael said that she was in no fear of Wilson.
¶ 8. Later that night, at approximately 10:00 p.m., Officers Valentine and Keller and Sergeant Jackson responded to a second incident, this one at Annie Walker’s residence. Upon arrival, the officers found Wilson sitting on the sidewalk steps leading to the house. Officer Keller testified that Wilson was “calm, cool [and] cooperative.”
¶ 9. Walker and her husband informed Officer Valentine that they simply wanted Wilson to leave. Walker testified that Wilson was very intoxicated and angry, but Walker did not suggest that she feared Wilson. Furthermore, Walker suggested at trial that she had wanted Wilson arrested, but she indicated that she had wanted him arrested only for trespassing.
¶ 10. Officer Keller informed Wilson that he could choose between his mother’s picking him up or going to jail. Ultimately, Officer Keller called Wilson’s mother, who agreed to pick up Wilson at the police department. It is disputed whether Wilson was under arrest at that time. Although Wilson was placed in handcuffs before being placed in the car, the officers testified that it is common practice to place any person riding in the back of a patrol car in handcuffs. In addition, Officer Keller gave the dispatcher the code “10-12,” which indicates a passenger or visitor is in the car, rather than the code “10-15,” which indicates that a prisoner is in the car and the car is en route to the jail.
¶ 11. Some time later, Wilson’s mother and father picked up Wilson at the police *1174 station, but no evidence was presented at trial as to where Wilson’s parents took him.
¶ 12. At approximately 11:15 p.m., the officers were called back to Carmichael’s and Williams’s house. At the scene, the officers found Wilson with a knife in his hand, standing over Williams, who was still alive but covered in blood. The officers arrested Wilson, and Williams died of stab wounds at the hospital.
¶ 13. On June 23, 2008, following a bench trial, the Circuit Court of the Second Judicial District of Jones County entered its final judgment, finding the City of Laurel liable for the death of Lisa Williams.

ISSUE

¶ 14. The only issue on appeal is whether the City of Laurel is immune from liability under the facts of this case.

STANDARD OF REVIEW

¶ 15. Immunity is a question of law. Miss. Dep’t of Pub. Safety v. Dum, 861 So.2d 990, 994 (Miss.2003) (citing Mitchell v. City of Greenville, 846 So.2d 1028, 1029 (Miss.2003)). “This Court reviews errors of law de novo, including the proper application of the Mississippi Tort Claims Act.” Phillips v. Miss. Dep’t of Pub. Safety, 978 So.2d 656, 660 (Miss. 2008). Notwithstanding, “[t]he findings of fact by a circuit court judge, sitting without a jury, will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence.” Id. (citing City of Greenville v. Jones, 925 So.2d 106, 109 (Miss.2006); City of Jackson v. Perry, 764 So.2d 373, 376 (Miss. 2000)).

DISCUSSION

¶ 16. Through the Mississippi Tort Claims Act (MTCA), the Legislature has provided that, as a matter of public policy, the state and its political subdivisions are immune from tortious acts or omissions by its employees while they are acting within the course and scope of their employment. Miss.Code Ann. § 11-46-7(1) (Rev.2002); Phillips, 978 So.2d at 660. However, the Legislature saw fit to carve out certain exceptions to the general rule of sovereign immunity. The applicable exception in this case provides that when a police officer acts within the scope of his or her employment, the city will not be held civilly liable unless the officer acted with reckless disregard of the safety and well-being of a person not engaged in criminal conduct. Miss.Code Ann. § ll-46-9(l)(c) (Rev.2002).[1]
¶ 17. To recover damages in such a matter, a plaintiff must “prove by a preponderance of evidence that the defendants acted in reckless disregard of his [or her] safety and that [the plaintiff] was not engaged in criminal activity at the time of injury.” Phillips, 978 So.2d at 661 (citing Simpson v. City of Pickens, 761 So.2d 855, 859 (Miss.2000)). “Reckless disregard has been defined by this Court as a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing *1175 a thing or wrongful act.” Phillips, 978 So.2d at 661. “Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.” Dum, 861 So.2d at 995 (quoting Maye v. Pearl River County, 758 So.2d 391, 394 (Miss.1999)). Reckless disregard occurs when the “conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.” Id. (quoting Maldonado v. Kelly, 768 So.2d 906, 910-11 (Miss. 2000)). In addition, “the nature of the officers’ actions is judged on an objective standard with all the factors that they were confronted with.” Phillips, 978 So.2d at 661 (citing City of Jackson v. Powell, 917 So.2d 59, 71 (Miss.2005)).
¶ 18. The trial judge held that “the officers did act in reckless disregard for the safety and well-being of Lisa Williams when they failed to arrest Kenneth Wilson either at the home of Rika Carmichael or later at the home of Annie Walker.” The judge went on to hold that “[b]y refusing to place Kenneth Wilson under arrest on either of these two occasions, the officers ... displayed a conscious indifference to the consequences of their failure to make the arrest.”
¶ 19. In a similar case, Collins v. Tallahatchie Comity, 876 So.2d 284 (Miss.2004), the failure to arrest a person suspected of domestic violence was not found to rise to the level of reckless disregard. In Collins, the plaintiffs estranged husband telephoned the plaintiff and threatened to kill her. Id. at 286. The plaintiff reported the threatening calls to the Tallahatchie County Sheriffs Department and sought her estranged husband’s arrest. Id. The following day, at the suggestion of the sheriffs department, the plaintiff signed a criminal affidavit to effectuate an arrest warrant on her estranged husband for domestic violence. Id. The arrest warrant was signed by the judge but was never delivered to the sheriffs department. Id. Four days later, the plaintiffs estranged husband broke into the plaintiffs home and shot her twice before taking his own life. Id.
¶ 20. The plaintiff survived and sought damages from Tallahatchie County for the sheriffs department’s failure to make a warrantless arrest under Mississippi Code Section 99-3-7(3) when there was probable cause to do so.[2] Id. at 287. This Court affirmed the trial judge’s decision to extend immunity under Section 11-46-9(l)(c), noting that “reckless disregard is a higher standard than gross negligence and ‘embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.’ ” Id. at 287 (citing Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss.1999)). The Court recognized that, although there was ample probable cause to make a warrantless arrest under Section 99-3-7(3), failure to arrest in such a situation does not inherently establish reckless disregard. Id. at 288.
¶ 21. Here, much like the plaintiff in Collins, the plaintiffs assert that the officers acted with reckless disregard of the safety and well-being of Lisa Williams when they failed to arrest Wilson prior to her murder. However, they have failed to meet the burden placed upon them by Section 11 — 46—9(l)(c). Nothing in the record establishes that the officers’ actions amounted to willful or wanton conduct. *1176 There is no evidence that the officers intended for harm to follow their decision not to arrest, nor is there evidence establishing a conscious indifference to the consequences of their actions.
¶ 22. The officers went to Williams’s house following the 911 call and interviewed all of the parties present. Nothing in the record indicates that, during the interviews, either Wilson or Williams expressed a desire to press charges against the other, or that Williams was in fear of Wilson. Furthermore, although the trial judge found adequate probable cause, failure to arrest where probable cause is present does not inherently support a finding of reckless disregard. See, e.g., Collins, 876 So.2d at 287-88. The decision not to arrest despite probable cause must “embrace willful or wanton conduct.” Phillips, 978 So.2d at 661. The officers adequately investigated both incidents, weighed the evidence before them, and made informed decisions regarding the appropriate measures to take. To hold that the officers understood Wilson to constitute an “unreasonable risk” to Williams, and that they “deliberately disregarded that risk and the high probability of harm involved” would be inconsistent with our established precedent. Burn, 861 So.2d at 995.
¶ 23. Because the officers did not act with reckless disregard for the safety and well-being of Lisa Williams, other avenues of immunity asserted by the defendant need not be addressed.[3] Additionally, the argument as to whether the officers’ actions were the proximate cause of the death of Williams need not be discussed.

CONCLUSION

¶ 24. The officers of the City of Laurel did not act with reckless disregard for the safety and well-being of Lisa Williams; thus immunity under Mississippi Code Section 11 — 46—9(l)(c) is proper. The decision of the Circuit Court of the Second Judicial District of Jones County is reversed and rendered.
¶ 25. REVERSED AND RENDERED.
WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. WALLER, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.

. Specifically, Mississippi Code Section 11-46-9(l)(c) states:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
(c) arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

. “Any law enforcement officer shall arrest a person with or without a warrant when he has probable cause to believe that the person has, within twenty-four (24) hours of such arrest, knowingly committed a misdemeanor which is an act of domestic violence....” Miss.Code Ann. § 99-3-7(3) (Rev.2007).

. The City asserts that, aside from the immunity granted under Section 11 —46—9(1)(c), immunity is proper under Section 99-3-7(7) which states in full: "A law enforcement officer shall not be held liable in any civil action for an arrest based on probable cause and in good faith pursuant to subsection (3) of this section, or failure, in good faith, to make an arrest pursuant to subsection (3) of this section." Miss.Code Ann. § 99-3-7(7) (Rev. 2007).