# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00249-COA

KHAVARIS HILL                                               APPELLANT

v.

HINDS COUNTY, MISSISSIPPI, SHERIFF                         APPELLEES
TYRONE LEWIS, IN HIS OFFICIAL CAPACITY
AND DEPUTY BRACEY COLEMAN, IN HIS
OFFICIAL CAPACITY

| | |
|---|---|
| DATE OF JUDGMENT: | 02/04/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CHUCK MCRAE<br>JHASMINE EUNIQUE ANDREWS |
| ATTORNEYS FOR APPELLEES: | JASON EDWARD DARE<br>STEVEN JAMES GRIFFIN<br>J. LAWSON HESTER<br>ROY A. SMITH JR. |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 08/08/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This is an appeal from a grant of summary judgment by the Circuit Court of Hinds County. Finding error, we reverse and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

¶2.     This action arises out of events from Sunday evening, January 1, 2012, in Jackson,

Mississippi. Deputy Ogden Wilburn[1] and Deputy Bracey Coleman,[2] both of the Hinds County Sheriff's Office, were off-duty, working a private security detail at a private apartment complex while in uniform and operating a county owned, unmarked, black Nissan Pathfinder with lights concealed inside the vehicle and possibly a siren.[3] While the two were in the vehicle at or near the intersection of Northside Drive and Medgar Evers Boulevard, Khavaris Hill purportedly approached from behind and passed their vehicle and another while the light was green. Hill continued onto Interstate 220.

¶3. After Hill passed, the deputies followed. At some point after Hill's passing the deputies, they activated their blue lights and possibly their siren. Rather than yielding to the Pathfinder, Hill continued on I-220 for approximately three miles and exited at Watkins Drive. After exiting, Hill traveled approximately three-quarters of a mile on Watkins Drive before his vehicle collided with another.

¶4. After the collision, the deputies approached Hill's vehicle and, after Hill failed to heed

---

[1] Wilburn stated in his deposition that he was a captain with the sheriff's office and assigned as commander of the Raymond, Mississippi detention center. His "day-to-day duties were to . . . maintain[] all records dealing with inmates, officers, inmate grievances, officer grievances[,] [m]aintain security and safety of the facility[,] [m]ake sure the inmates were taken of [sic][,] [m]ake sure my officers were safe. I also oversaw transportation . . . of the inmates from there to court, back and forth."

[2] Coleman stated in his deposition that he was a part-time detention officer with the sheriff's office and served as the "pod control officer." In that role, he "operated the control system for opening and closing doors, inmates going out to - - for medical reason [sic] or any other reasons, things like that. Anytime they had to leave the cell block, then I was responsible for opening the doors for them and closing the doors and making sure they were secure."

[3] Whether or not the deputies utilized a siren during their pursuit appears to be a disputed fact based on our review of the record.

their commands to exit the vehicle, the deputies pulled him from his vehicle, placed him face down on the ground, and handcuffed him. Subsequently, emergency medical services arrived along with the Jackson Police Department, which rendered aid to those involved in the crash, including Hill, and documented the scene. Hill was ultimately taken to the hospital, where he was diagnosed with a fracture in his neck. Hill was never charged with a moving violation or any other crime.

## PROCEDURAL HISTORY

¶5.   In December 2012, Hill filed suit in the United States District Court for the Southern District of Mississippi against the individual deputies, the sheriff, and Hinds County alleging both federal claims brought under 42 U.S.C. § 1983 (2012) and state claims brought under the Mississippi Tort Claims Act (MTCA). His federal claims included alleged constitutional violations, conspiracy to violate constitutional rights, and supervisory liability for constitutional violations. His state claims included alleged negligence, gross negligence, and reckless disregard for his safety.

¶6.   On February 26, 2014, a hearing was held in that court on the individual deputies' motion for summary judgment premised upon qualified immunity. The court orally granted summary judgment on that ground, concluding that the deputies did not violate Hill's constitutional rights. The defendants moved for summary judgment on all remaining theories of liability. On March 9, 2015, the court issued a written order granting summary judgment as to Hill's federal claims. The court went on to state that "Hill's state law claims are dismissed *without* prejudice to their refiling in a state court of competent jurisdiction."

3

(Emphasis added).

¶7.     On March 18, 2015, Hill refiled his state-law claims with the Circuit Court of Hinds County, and the defendants subsequently moved for summary judgment. On February 4, 2016, the circuit court granted summary judgment for the defendants.

**DISCUSSION**

¶8.     The court reviews grants of summary judgment de novo. *Thrash v. Deutsch, Kerrigan, & Stiles, LLP*, 183 So. 3d 838, 841-42 (¶10) (Miss. 2016). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). "The [movant] bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." *Thrash*, 183 So. 3d at 842 (¶10) (citing *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (¶5) (Miss. 2005)). If any triable issues of fact exist, we will reverse summary judgment. *Conley v. Warren*, 797 So. 2d 881, 882 (¶6) (Miss. 2001).

¶9.     The circuit court's summary judgment was based on two conclusions: (1) that the deputies were immune from Hill's claims under the MTCA for their police-protection activities, and (2) that res judicata barred Hill's "claims against Deputy Coleman in his individual capacity."[4]

---

[4] The circuit court also held that it was "uncontested that the Hinds County officers were engaged in police protection at the time of the subject accident." To the best we can ascertain from the record, the circuit court appears correct in this holding. In reviewing Hill's complaint and the Appellees' answer, Hill asserted that the deputies were police officers employed by Hinds County and the Hinds County Sheriff's Office at all times relevant to the events involved. The Appellees stipulated that the deputies were employees of Hinds County.

## I. Immunity

¶10. The MTCA states:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection *unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury*.

Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012) (emphasis added).

### a. Reckless Disregard

¶11. The circuit court found there was "no genuine issue of material fact or evidentiary basis to support a claim of reckless disregard as a result of the police pursuit and apprehension of [Hill] in this case." "To be entitled to immunity, the [deputies] must not have acted with reckless disregard for the safety of others." *Miss. Dep't. of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶10) (Miss. 2003). "Reckless disregard is more than mere negligence, but less than an intentional act." *Id*. "Our caselaw indicates reckless disregard embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Id*. at 995 (¶10).

¶12. The Mississippi Supreme Court upheld a finding of reckless disregard in *City of Jackson v. Brister*, 838 So. 2d 274 (Miss. 2003), when officers gave chase to a person suspected of passing a forged check at a bank where the officers traveled more than twenty miles over the posted speed limit and the suspect drove in excess of seventy miles per hour, resulting in the suspect colliding with a third party.

¶13. The *Brister* court cited with approval the factors listed in *District of Columbia v.*

5

*Hawkins*, 782 A.2d 293, 300 (D.C. 2001), to determine whether an officer acted in reckless disregard of others while pursuing a third party: (1) the length of the chase; (2) the type of neighborhood; (3) the characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) the weather conditions and visibility; and (6) the seriousness of the offense for which the police are pursuing the vehicle. *Brister*, 838 So. 2d at 280 (¶22). Here, the chase spanned approximately four miles and five minutes, through residential areas, on both Interstate and surface streets, through highly congested traffic according to the deputies, at night, and for either careless or reckless driving on account of Hill almost hitting the deputies at the light.

¶14.    In *Brister*, the court also anchored its decision on the fact that the officers involved in the chase were violating a departmental order that a pursuit may only be initiated when a suspect's escape is more dangerous to the community than the risk posed by the pursuit. *Brister*, 838 So. 2d at 280 (¶21). Here, as in *Brister*, both deputies stated that they were aware of the department's "standing order" on pursuits at the time of the pertinent events. Specifically, they were aware of (1) the need for a felony or suspicion of a felony to initiate a pursuit, and (2) that if pursuing in an unmarked vehicle, the unit is to call for a marked vehicle to take over pursuit immediately. Both deputies stated that the reason they pursued Hill was because he "almost hit" them when he passed their vehicle and another at a green light and Wilburn wanted to see what the driver's (Hill's) "problem" was. Coleman testified that, at the time that Hill passed them, he had committed a violation of a traffic ordinance, which he admitted was not a felony. Further, both deputies stated that they communicated

6

with dispatch, but never called for a marked unit to take over the pursuit.

¶15.   Other factual disputes persist. The deputies also stated that they terminated the pursuit as they exited Interstate 220 and never saw Hill's vehicle again until they arrived at the crash scene, yet Hill asserts the deputies continued their pursuit with blue lights staying "right on" Hill until the deputies purportedly "bumped" his vehicle, causing it to collide with another vehicle.

¶16.   These differing versions give rise to disputed factual issues. We conclude that genuine issues of material fact exist as to whether the deputies "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c).

### b.      Hill's "Criminal Activity"

¶17.   The circuit court also held that the defendants were immune from Hill's claims because he, "by fleeing law enforcement, was engaged in criminal activity at the time of the accident."

¶18.   "If the victim is engaged in an illegal activity that is a cause of the harm, the government is immune from liability." *Durn*, 861 So. 2d at 997 (¶20). But "[i]t must be shown that the victim was engaged in criminal activity that has a causal nexus to the wrongdoing of the tortfeasor." *Id*. "Where an officer has probable cause to arrest and proceeds to do so, there is the requisite nexus between criminal activity and the action causing injury." *Id*. "The criminal activity supporting the exemption must be more than fortuitous, but it applies to misdemeanors as well as felonies." *Id*. "Misdemeanor traffic

7

offenses are criminal activities" within the meaning of the exemption. *Id*.

¶19. Here, the circuit court held that Hill was engaged in criminal activity by fleeing law enforcement, which is a crime under Mississippi Code Annotated section 97-9-72 (Rev. 2014). The circuit court ruled as such even though section 97-9-72(5) provides a defense to prosecution if "no law enforcement vehicle used in the attempted stop was clearly marked as a law enforcement vehicle." Here, all parties stipulate that the deputies were driving an unmarked vehicle at all pertinent times. As it appears that Hill possessed an affirmative defense to the crime of fleeing a law enforcement officer, whether or not Hill's failure to stop for the deputies in their unmarked vehicle constituted criminal activity is at least a disputed question of fact.

¶20. Notwithstanding the legal defense afforded Hill for his failure to stop, that was not the "criminal activity" that provided the "causal nexus" for the deputies to give chase. That purported activity was Hill's alleged either careless or reckless driving (allegedly nearly hitting the deputies' vehicle and another),[5] which Hill disputes ever happened, and for which he was never charged with a crime.[6] Admittedly, *Brister* and *Durn* are both cases in which the plaintiff was not the purported wrongdoer. In *Brister*, the driver of the third vehicle died, and her heirs brought the action. In *Durn*, the trooper was in pursuit of another speeding motorist when Durn made a left-hand turn in front of the trooper. However, this Court has

---

[5] Though no formal charge was made or citation given, that the deputies gave chase to Hill for either careless driving, Miss. Code Ann. § 63-3-1213 (Rev. 2013), or reckless driving, Miss. Code Ann. § 63-3-1201 (Rev. 2013), could be asserted by the officers.

[6] We acknowledge the Appellees' assertion that Wilburn would have filed the paperwork for Hill's arrest warrant but for his being terminated in the interim.

held that the critical moment to gauge whether the individual is engaged in criminal activity is "at the time of injury." *City of Jackson v. Calcote*, 910 So. 2d 1103, 1111-12 (¶¶25-26) (Miss. Ct. App. 2005). Here, according to the officers' version of events, they were no longer in pursuit when Hill's collision occurred and Hill was injured.

## II.     Res Judicata

¶21.     The written order from the federal court states that the "motion for summary judgment is granted as to Hill's federal claims. Hill's state-law claims are dismissed without prejudice to their refiling in a state court of competent jurisdiction." The circuit court agreed with the assertion of the officers that the oral ruling of the federal court controlled. We note that the federal court issued an oral decision prior to its written decision; however, Mississippi's longstanding rule is that a court's written decision trumps its oral one. *Banks v. Banks*, 511 So. 2d 933, 934-35 (Miss. 1987). Mississippi's rule is in accord with the federal law, that a trial court's written findings of fact and conclusions of law are its judgment.[7] In its written ruling, the federal court dismissed all state-law claims *without* prejudice. The circuit court stated that the federal court dismissed all state-law claims *with* prejudice against Deputy Coleman in his individual capacity arising out of the pursuit and apprehension of Hill. In that assessment, the circuit court was in error.

¶22.     Therefore, the trial court erroneously granted the Appellees summary judgment. Based

---

[7] *See Duffer v. Am. Home Assurance Co.*, 512 F.2d 793, 799 (5th Cir. 1975) (federal trial court's oral expression of the judgment it intended to enter was not itself a judgment, but rather the trial court's written findings of fact and conclusions of law were its judgment). A federal-court judgment is "rendered when it is set forth in writing on a separate document and entered on the civil docket, in compliance with [Federal] Rule [of Civil Procedure] 58." *Atl. Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 208 (6th Cir. 1996).

on the contested facts, triable issues of material fact exist. "The summary judgment procedure . . . cannot be used to deprive a litigant of a full trial of genuine fact issues." *Conley v. Warren*, 797 So. 2d 881, 884 (¶13) (Miss. 2001). Furthermore, the circuit court's reliance on res judicata, argued by the Appellees, was error as res judicata was not applicable to the posture of this case.

## CONCLUSION

¶23. For the foregoing reasons, we reverse the circuit court's grant of summary judgment for the Appellees and remand for further proceedings consistent with this opinion.

¶24. **REVERSED AND REMANDED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**